CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

AUG 2 6 2016

JULIA C. DUDLEY, CLERK
BY: K Dotter
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

for the

Western District of Virginia

| | | |
|---|---|---|
| MATTHEW W. ARMSTRONG<br>3308 TANNERS RIDGE ROAD STANLEY VA 22851<br>MATT22851@YAHOO.COM 540-778-51513 | ) ) ) ) | Case No. 5:16CV00053<br>*(to be filled in by the Clerk's Office)* |

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

JAMES MADISON UNIVERSITY ET AL.
SEE ATTACHED LIST OF DEFENDANTS

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

## COMPLAINT AND REQUEST FOR INJUNCTION

I.    **The Parties to This Complaint**

    A.    **The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | MATTHEW W ARMSTRONG |
| Street Address | 3308 TANNERS RIDGE ROAD |
| City and County | STANLEY |
| State and Zip Code | VA 22851 |
| Telephone Number | 540-778-5153 |
| E-mail Address | MATT22851@YAHOO.COM |

    B.    **The Defendant(s)**

        Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name                     JMU ET AL. PLEASE SEE ATTACHED LIST OF DEFENDANTS

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 2

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 3

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

CIVIL RIGHTS ACT OF 1964, 20 USC-1681, 42 USC-6101, 18 USC-1001, 28 USC-4101, 18 USC-241, 42 USC-1983, FIRST, FOURTEENTH AMDTS US CONSITUTION. PLEASE SEE ATTACHED LIST OF DEFENDANTS AND ISSUES FOR COMPLETE LIST.

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual

      The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____ .

   b. If the plaintiff is a corporation

      The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

      and has its principal place of business in the State of *(name)* _____ .

   (If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)

2. The Defendant(s)

   a. If the defendant is an individual

      The defendant, *(name)* _____, is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

b. If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)

3. The Amount in Controversy

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because *(explain)*:

$46,000,000.00 (FORTY SIX MILLION DOLLARS) PLUS COSTS, FEES, REMEDIES AND

MISCELLANEOUS AWARDS

_____

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

JAMES MADISON UNIVERSITY

_____

_____

_____

B. What date and approximate time did the events giving rise to your claim(s) occur?

MARCH 3, 2016 AND DAYS FOLLOWING

_____

_____

_____

_____

C.  What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

A CORE OF THREE DEFENDANTS FALSIFIED TESTIMONY IN ORDER TO EFFECT A JUDGMENT

OF SEXUAL MISCONDUCT AGAINST PLAINTIFF. OTHER DEFENDANTS PARTICIPATED,

CONTRIBUTED TO OR WERE ACCESSORIES IN HARM DONE TO PLAINTIFF.

PLEASE SEE ATTACHED LIST OF DEFENDANTS AND ISSSUES AND REQUEST FOR INJUNCTION

FOR A THOROUGH ACCOUNT.

## IV.  Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

NA

## V.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

PLAINTIFF REQUESTS THAT THE TOTAL OF $46,000,000.00 IN ACTUAL, EXEMPLARY AND PUNATIVE

DAMAGES BE PROPORTIONIALLY ASSESSED AMONG DEFENDANTS BY THIS HONORABLE COURT.

PLAINTIFF PERCEIVES NEED FOR A STRONG PUNATIVE DAMAGES AWARD TO ACT AS A DETERRANT

TO OTHER POTENTIAL OFFENDING OFFICIALS AND EMPLOYEES AT UNIVERSITIES NATIONWIDE.

PLEASE SEE ATTACHED PETITION FOR RELIEF AND AWARD

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     08/25/2016

Signature of Plaintiff

Printed Name of Plaintiff     MATTHEW W ARMSTRONG

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

<u>MATT ARMSTRONG V JMU ET AL</u>
ADDITIONAL PAGES

<u>TABLE OF CONTENTS</u>

LIST OF DEFENDANTS...1
COMPLAINT...2
REQUEST FOR AWARDS AND REMEDIES...37
REQUEST FOR JURY TRIAL..38
REQUEST FOR INJUNCTION...38

<u>DEFENDANT LIST</u>

<u>1) JAMES MADISON UNIVERSITY</u>
c/o Susan M. Wheeler, University Counsel
MSC 7614 Harrisonburg VA 22807
<u>WHEEL2SL@JMU.EDU</u>   568-5242

<u>2) ERICA ESTES</u>
Aka Ms. Doe #2
(along with Meghan Calabro or Ms. Doe #1 known as "The Doe Sisters")
Coordinator of Member Services, UREC
Harrisonburg VA 22807
<u>ESTESEA@JMU.EDU</u>   568-8742

<u>3) MEGHAN C. CALABRO</u>
Aka Ms. Doe #1
(along with Erica Estes or Ms. Doe #2 known as "The Doe Sisters")
Former Fitness Attendant, UREC, Harrisonburg VA 22807          568-8737
Residence Address Most Likely:  16 Renier Court, Middletown, NJ   07748-1650
Cell Phone:  732-610-7115
Might be contacted at:  <u>CALABRMC@DUKES.JMU.EDU</u>
Likely at landline:  732-796-0082

<u>4) AMY M. SIROCKY-MECK</u>
Associate Director, University Health Center
Health Education, Advocacy and Prevention
Title IX Support for Students
University Health Center, MSC 7901
Harrisonburg VA  22807
<u>sirockam@jmu.edu</u>   568-6178

<u>5) ROBERT M. GOLSON</u>
Associate Director, Facilities and Operations, UREC
Harrisonburg VA  22807
<u>GOLSONRM@JMU.EDU</u>   568-8717

1

6) ERIC C. NICKEL
Director, UREC
UREC 209, MSC 3901
Harrisonburg, VA  22807
NICKELEC@JMU.EDU    568-8702


7) STEVE BOBBITT
Associate Director for Programming, UREC
UREC 207,  MSC 3901
Harrisonburg  VA  22807
BOBBITSR@JMU.EDU    568-8707


8) JAMES ROBINSON
Title IX Administrator
1017 Harrison Street, JMAC 2
MSC 5802,  Harrisonburg  VA  22807
ROBINSJR@JMU.EDU            568-6991


9) JENIFFER PHILLIPS
Title IX Officer for Athletics
MSC 2301;  261 Godwin Hall
Room 141, Harrisonburg  VA 22807
phill2jr@jmu.edu    568-8036


## COMPLAINT

*Preamble*

    Matt Armstrong, Plaintiff, comes before this honorable Court for relief and award against the unlawful and damaging acts of adversaries at James Madison University.  The people or institutions named in this Complaint either individually or collectively defrauded me of or stole valuable possessions, violated rights protected under the Constitutions of the State of Virginia and/or United States, willfully and knowingly-by virtue of being originators, accessories, contributors or accomplices-damaged my reputation through slander, libel and/or engaged in malfeasance and misconduct while employed as government officials.

    It is evident that a false judgment standing upon lies as well as arrived at with little or no due process is a defamation, as is the case here.  The decision against me was totally rooted, founded and grounded in a lie.  It is also clear that, even if an official determination of offense is held private in the normal course of business operations, because of the grapevine nature of human communication any official decision is mouthed abroad quickly and is truly a public affair, which is also the case here.

2

The crux of this case involves an unscrupulous, unmerited and fraudulent attack by a JMU coed employee, Meghan Calabro accusing me of sexual misconduct. Additionally her supervisor, Erica Estes-who should have excused herself from the administration of the issue because of conflict of interest-compounded the situation with her own deliberately falsified testimony. Their illicit activities were aided and abetted by complicit or weak university officials who did not sufficiently do their jobs to make sure Plaintiff was the subject of a bona fide complaint. As if matters were not bad enough with the two original liars, Calabro and Estes, influencing and misdirecting their associates and managers, the Title IX Administrator, James Robinson, wrote a completely fictitious account of an interview with the Plaintiff, with numerous lies, worsening the situation considerably. The report created by Title IX Coordinator Robinson is almost entirely fictional-a flagrant, notorious and shocking incident of corruption in public office. As a result my membership in UREC was permanently revoked.

The nucleus of pathological and criminal behavior in this matter lies in the prevarications and deceits made by the two JMU UREC employees, Calabro and Estes, and the Title IX Administrator, Robinson. The two employees outright lied and misrepresented, exaggerated and distorted issues and facts in their testimony against me. They bamboozled and stampeded, motivated and manipulated their JMU superiors and other officials into become accessories in their crimes, when they should have known better-and that is why their names also appear on this Complaint.

So there are three central characters in this drama: the two resentful, prejudiced and hateful UREC employees and the Title IX official-and a host of guilty assistants who were materially involved and should have put a stop to it, but did not do so-including the office of the President of the university. They did not oppose or resist, adequately examine or halt the evil designs of the original three, when they could and should have. These nasty campus bureaucrats attacked all as one like a like a pack of vicious dogs!

*Theme: Justice Will Be Served Upon All*

But first allow me please to introduce the focus and spiritual foundation of my presentation:

*A false witness will not go unpunished, nor will a liar escape.*

Proverbs 19:5

I give this word because the core defendants-Calabro, Estes and Robinson-are liars-and it is critical for the Plaintiff to expose them for what they are to this Court. This wisdom from the Word of God, presented for the Defendant's sake, gives strict warning of the consequences of bearing false witness against a neighbor, and informs of the sure and certain punishment that will come upon them should they continue to prevaricate and deceive. It's essential to impress upon the defendants that punishment will surely result as the reward for lying against their neighbor-and a horrible end may be their fate-even in this present life. A reward for evil works is probably already being instituted into their lives today in the form of health issues or other problems, and they will be most likely be scheduled for further sorrows as the years of their lives go by. Thus justice is served partially during their time here on Earth.

The law of the Lord calls our attention to the fact that these matters are being heard and tried in two courts at once-one here, and one above in the court of the Lord God. In as much as it

3

is possible I'm going to invoke the presence of the Lord-so much that it may be evident in the courtroom in a way that can be sensed, so that lying witnesses will be testifying not only to man, but directly into the face of God.

So let all those who have defamed me come forth and pour forth their lies if they wish: for I know justice will be done-and the guilty will certainly be punished by divine judgment. Let them come to this Court and lie a second time-so that they will be punished all the more. Although justice may be difficult to come by under the laws, limitations and procedures of this land, the fact that it will be obtained-and just punishments meted out in anger-gives me great pleasure and satisfaction. Here is another confirmation of the fate of liars:

"...and all liars...will be thrown into the lake of fire..."

Revelation 21:8

One day this world will be rid of its human vermin. This is essential if we are to have a perfect place to live. It will be my goal, since I am a minister of the Lord, to invoke his continual attendance at this trial. I will put these defendants through a lie detector of sorts.

Plaintiff asserts that if membership in UREC is granted to all, it can be denied to none except upon extraordinary grounds and with adequate proofs, given in a procedure that follows a distinct plan of due process. Due Process, as guaranteed by constitutions of the State of Virginia and the USA, was absolutely absent in the administration of these affairs.

Plaintiff further asserts he has the right to expect reasonable behavior from neighbors and sound, honest policies from government officials. This also was considerably absent during this affair.

Plaintiff also attests that in effect JMU has put into operation a state sponsored religion in that a system of values, judgments of morals and ethics has been used against me, sees me as a violator, an offender because of my faith and creed. This worldview of American culture sees an older man who wants a younger woman as a perverse offender-when in fact there is no prohibition against marriage of the older man and the younger woman in the Law of the Lord, the Bible. The enforcement of this cultural creed against Plaintiff is therefore a bogus moral and ethical action, and must be rejected.

Regrettably, after the recent events involving a false accusation of Sexual Harassment against me by University Recreation (UREC) employees Calabro and Estes, then the subsequent failure of the University to protect my rights, and the deliberate abuse and defrauding of my rights by university official Robinson, resulting in the unjustifiable suspension of my UREC membership, an overall defamation and much other harm, and the unwillingness or inability of the University to resolve this matter out of court, I must file this complaint. The constitutional legal protections afforded me covering age, faith/creed, sex and freedom of speech have been violated by adverse actions taken against me by those named. The JMU Office of Equal Opportunity also contributed to or directly engaged in discrimination by improperly favoring the employee's complaints and obstructing my own counterclaim in retaliation for my civil rights claims.

My right to free speech has been violated in that nothing I said to Calabro and Estes is prohibited under a reasonable interpretation of free speech allowed by our Constitutions. They and related departments and officials are attempting to abridge my liberty.

4

## DEFENDANT #1) MEGHAN C. CALABRO
Aka Ms. Doe #1
(along with Erica Estes or Ms. Doe #2 known as "The Doe Sisters")
Former Fitness Attendant, UREC
UREC, Harrisonburg VA 22807          568-8737
Residence Address Most Likely: 16 Renier Court, Middletown, NJ 07748-1650
Cell Phone: 732-610-7115
Might be contacted at: CALABRMC@DUKES.JMU.EDU
Likely at landline: 732-796-0082

### 1. DISCRIMINATION ON THE BASIS OF AGE, RELIGION, SEX

*1st Amendment US Constitution (Free Exercise of Religion);* The Civil Rights Act of 1964 (Pub.L. 88–352, 78 Stat. 241, enacted July 2, 1964 *-outlawing discrimination on the basis of religion or sex in public accommodations);* **Title IX of the Education Amendments of 1972, as amended, (20 USC § 1681) – prohibiting discrimination on the basis of sex in education;** **The Age Discrimination Act of 1975,** as amended (42 USC § 6101); *Virginia Human Rights Act - § 2.2-3900.*

      Since Calabro's claim of Sexual Harassment is bogus-there is no substance to it; it is a fraud-then her motivation to attack Defendant can be logically presumed to arise from other grounds. And this attack must arise from hatred rooted in prejudices against Plaintiff because he is a 1) man making romantic overtures to her, which she admits although not giving the truth of the matter; 2) he is an older man-which in her mind should stay in an older man's "place" (meaning look for romance only with older women)-and her intent was to put him in his place by bringing up a defamatory claim against him, and 3) as she is particularly aware of his religious beliefs, and aware that he acts upon his beliefs and justifies his behavior, being grounded in his faith and standing in reliance upon the Word of God for justification for his deeds in his interaction with her, which belief she despises and has been taught to despise probably her whole life by culture, this also motivated her to attack Plaintiff as well.

### 2. FRAUD

*18 USC – 1001: Statements or Entries General:* (a1) Calabro falsified a material fact and; (a2) made a materially false, fictitious and fraudulent statement or representation, and; (a3) used a false writing in the form of an email knowing the same to contain materially false, fictitious, or fraudulent statements or entries. Plaintiff asserts that, if for no other direct reason, the JMU campus comes under federal jurisdiction because of the US government's pervasive financial and ideological influence over campus affairs, especially the US Department of Education in Title IX matters. Calabro perpetrated a fraud. She deliberately triggered the JMU Automatic Reporting of sexual misconduct policy with a spurious, disingenuous claim-using state resources and poor protocol and policy as a weapon. She misused and abused government power in persecution of a citizen. She is guilty of misbehavior in office. It is clear that taking in hand the apparatus of the state in Sexual Misconduct law and wielding it against an adversary is an attack. It is an assault by tangential means. She persisted in an intransigent prosecution of an abusive claim without grounds.

5

_Code of Virginia: Forgery, uttering, other writings: 18.2-172_.  Calabro communicated a fraudu-
lent statement to UREC officials resulting in harm to Plaintiff.

Citizens in general need to be protected from abuse by campus officials who go outside
of the law and depart from their own policy guidelines in order to persecute those they don't like.
Men need to be protected from unscrupulous female attacks and government complicity in them.
This is exactly what this case is.

_USC Title IX_.  Calabro fraudulently abused Title IX of Federal Code and violated Title IX
by generating a veiled attack in the guise of a legitimate Sexual Harassment complaint-or "attack
complaint" - a contrived weapon and means of sexual harassment by manipulating government
officials into adverse action against Plaintiff.

## 3. DEFAMATION/PRESENTING IN A FALSE LIGHT

_28 US Code-4101.  Code of Virginia 18.2-417_ - Slander and libel. _Virginia Common Law. Code
of Virginia 18.2-417 - Slander and libel. Virginia Common Law._  Calabro's actions, writings and
statements were false, and have caused damage to my reputation-perhaps permanent damage.
She is the root source of all the trouble we deal with today.  If she had told the truth we would
not be here in court today.  She caused me much humiliation and shame by her false testimony
because I was thrown out of UREC with the repute of a sex pervert-in front of the whole commu-
nity.  She's put a blot upon my good name.  Her actions have presented me in a false light, re-
sulted in criticism, dishonor, shame, condemnation and loss of standing in the community.  I
have lost tangible rights and privileges as a result of her malicious, intentional deeds.  The deci-
sion by UREC officials to revoke my membership permanently was a defamation resulting partly
from Calabro's defamatory report.  Her dirty deeds are inexorably linked to the defamatory disci-
pline inflicted upon me by UREC management in the permanent revocation of my membership.
Her words are an insult and a dishonor.  She is a fundamental part of the tripartite core (Calabro-
Estes-Robinson) of falsifiers at the essence of this fiasco who have been incredibly damaging to
me and is wasting the time and damaging the reputations of her colleagues-who may be in dan-
ger of losing their jobs because of her.

Plaintiff asserts that Defendant's defamation was "published" in that anyone could obtain
a copy of it under FOIA.  It was and is available to the public.  It was also publically communi-
cated in that the falsity of it was partly responsible for the public defamation of Plaintiff in the
unjustified lifetime revocation of his UREC membership.  It is irrevocably linked in to the UREC
revocation and cannot be separated from it.  Plaintiff also asserts that in practical terms any in-
formation available to any person in any organization is at risk for unauthorized dissemination
and is most likely published by whisper and word of mouth.  Statements made within an organi-
zation are not necessarily secret.  The results of those statements are public, and if the defama-
tory language of Defendant was responsible, the Defendant is responsible for defamation.  De-
fendant's defamation was used as part of a public proceeding the results of which are well known
to the campus community.

## 4.  BREACH OF PUBLIC TRUST, ABUSE OF POWER.  CORRUPTION.  FALSE ENTRIES
IN A PUBLIC RECORD.  MALFEASANCE.

_USC Common Law.  Code of Virginia 2.2-3100, 3102_. "The General Assembly...[recog-
nizing]...our system of representative government is dependent upon its citizens maintaining the

6

highest trust in their public officers and employees, finds and declares that our citizens are entitled to be assured that the judgment of public officers will be guided by a law that defines and prohibits inappropriate conflicts…"

Calabro as a public officer failed to act truthfully and honestly by giving false testimony about Plaintiff. She acted dishonorably under the auspices of the State of Virginia and JMU. She betrayed the trust of a citizen (Plaintiff) while acting in an official capacity and being paid for by the citizen's tax dollars. Calabro is guilty of a betrayal of public trust, malfeasance and misconduct in public office and defamation in the performance of official duties as a public employee. She defamed Plaintiff through a false accusation of sexual misconduct and many lies used to inflate and distort the truth.

*Code of Virginia Title 2.2 Chapter 31; §2.2-3120*

*CC §18.2-472.* In testify falsely in her account of Plaintiff's behavior, Calabro contributed to, inspired and was accessorial in Robinson's creating a fictional account of a meeting with Plaintiff and publishing it as a Report of Conversation. Also acted in the same capacity with Meck's report. This essentially lead to forged entries in a public record because the false records of Meck and Robinson relied upon Calabro's false testimony.

## 5. RETALIATION

*USC Title IX. Code of Virginia 2.2-3103:* "No..officer…employee…of a state or local government agency shall… 10. Use his public position to retaliate..against any person for expressing views on matters of public concern or for exercising any right that is otherwise protected by law…" Calabro, being an employee of a state agency, retaliated against Plaintiff because Plaintiff's exercised his express right of freedom of speech and religion, and expressing views on matters of public concern.

## 6. CONSPIRACY

*18 USC – 241.* Meghan Calabro and Erica Estes conspired to injure, oppress, threaten and intimidate Plaintiff in the free exercise or enjoyment of rights or privileges secured to him by the Constitution or laws of the United States, and because of his having exercised the protected rights of age, sex, faith and free speech. It seems evident because of the similarities of their testimonies that they conspired together to falsify their reports, to inflate and distort their accounts of interactions with Plaintiff-in order to successfully bring about Title IX action against Plaintiff that would succeed on false merits. So, there are two counts of conspiracy active here-one of the two Does acting in concert to oppress Plaintiff, and one including all nine Defendants united under an umbrella of campus chauvinism-explained in next paragraph.

All Defendants are guilty of operating under a loose, perhaps unspoken conspiracy against Plaintiff to defraud him of rights in that no word was ever spoken on Plaintiff's behalf; there was no resistance or opposition to the negative actions against Plaintiff; there appears to have been no independent effort at assessing the merits of the case against Plaintiff or the merits of Plaintiff's objections to what happened to him. There was no effort to interview Plaintiff independently-which should have been undertaken by JMU officials in the President's Office as well as UREC when they heard that there were problems developing in the prosecution of the charges, because of Plaintiff's complaints. It was abundantly evident that Plaintiff had been denied due process by Title IX officials, which fact Plaintiff specifically noted in communication to

7

UREC officials. All campus participants acted in concert, united together like one huge pack of wolves against Plaintiff, perhaps under the tacit recognition that a successful bureaucrat never contradicts or opposes another bureaucrat. It might be said that a static or constant situation of conspiracy against all outside opposition exists on the JMU campus-which sets up a natural condition of oppression and injustice against all who, like Plaintiff, are considered outsiders or offenders. An "all for one and one for all" club seems to exist, with campus bureaucrats as exclusive members. Justice in campus proceedings may only be obtained by setting up an independent advocacy center for those who are opposed by JMU bureaucrats.

## 7. INVASION OF PRIVACY

*4TH Amendment US Constitution; 42 USC 1983. Virginia Common Law.* As a citizen I have the right to be secure in my personal, to conduct personal, private business free from government interference and regulation. Government officials need to mind their own business-which they failed to do.

Calabro's and Este's revelation of my very private communication to their peers, superiors and by extension the public is a gross invasion of my privacy-because the communication I made was of a very private and discreet nature, and never should have been publically revealed or scrutinized. Furthermore they inflated and distorted-and outright lied about-my communication so that a false name and reputation adhered to me that was not true and consistent with my actual character. They did not reveal accurately my actual communication, but created a fictional account of my communication. Additionally by prevaricating the issue into the public sphere they have forced me to litigate in order to restore my reputation, bringing me against my will into public light, opening up personal issues before strangers that should have remained private.

Calabro and Estes invaded my constitutional right to privacy by intruding into my personal life-which is not available for government inspection and approval-and further subjecting me to a public ordeal that was entirely uncalled for.

## 8. VIOLATION OF FREE SPEECH

*1st Amendment, US Constitution. VA Constitution: Article 1-Section 12. VA Code: Chapter 1 of Title 23 numbered 23-9.2:13.* Plaintiff asserts that JMU for the purposes of Title 23 may not unduly restrict free speech in indoor spaces unless with good cause.

Plaintiff asserts that under free speech guarantees he has the right to respectfully, honorably and reasonably socialize with females and enquire as to the prospect of marriage. Calabro and Estes violated Plaintiff's free speech rights when they initiated adverse legal action, in the form of sexual harassment complaints, against Plaintiff, when Plaintiff was merely exercising his right to free speech and behaving honorably and reasonably. Plaintiff must remain free to discuss personal and even sexual topics with university females, and make respectful propositions when he sees fit without fear of retaliation by government means. The state is neither a husband nor a father-and coeds may not use the government in their place. Men must be free to engage in normal socialization without fear of reprisals or false claims. Defendants Calabro's and Estes' complaints, and the resulting Title IX persecution, are violations of Plaintiff's my right of free speech because Plaintiff had the right to socialize normally in the course of looking for a wife-at any reasonable time or place-including while Calabro and Estes were on duty at UREC.

8

Citizens of this nation and Plaintiff I can't live in fear that approaching women about the topic of marriage is going to result in some kind of harmful campus quasi-legal prosecution. This fear impedes liberty. Plaintiff cannot live in fear that a beautiful princess Cinderella is going to suddenly transform in a poof and a puff of smoke into a wicked old witch astride a broomstick-as Clabro and Estes did. A citizen cannot live in fear of unfounded, bogus complaints by others which are then zealously processed by campus officials, as happened to Plaintiff, and turn a benign conversation into a matter for the Spanish Inquisition. Plaintiff cannot be required to contact a lawyer so that he can intervene and communicate with the proper legaleeze every time Plaintiff is interested in a girl. Older men have rights they may freely exercise to seek marriages with young girls, and these rights must be respected-whether they like it or not.

## 9. SEXUAL HARASSMENT

*Title IX of the Education Amendments of 1972.* JMU and UREC sexually harassed Plaintiff. JMU and UREC have a policy of sexual harassment oppressive to males at UREC in that coed employees are permitted to dress in sexually enticing attire yet hold the option to prosecute under Title IX those males who naturally respond. The enticing attire coupled with the option to prosecute creates a "Sex Trap", a hostile atmosphere for men. Calabro set up a sex trap. Calabro wore sexually provocative attire that clearly and flagrantly communicated her erotic assets. By so doing she communicated a desire for sexual attention and adventure to men. Because she asked for sexual attention she in effect forfeited her right to complain about sexual harassment.

A sexually oppressive atmosphere against men is also in place in that females are not required to give clear and convincing evidence of harassment by communicating that sexual or romantic attention is not wanted. Calabro failed to give any indication to Plaintiff that his attention was unwanted; in fact she feigned enjoyment of his attention. This is sexual harassment. Calabro sexually harassed Plaintiff under these two conditions: Setting the Sex Trap by erotically charged attire and; failing to clearly communicate about unwanted attention-that would have notified Plaintiff of the potential that his attention would cross the line from acceptable to harassment.

## 10. INTENTIONAL/UNINTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

*14th Amendment, US Constitution. Right of persons to be secure in their persons.* Calabro inflicted emotional distress by lying about Plaintiff's behavior and communication when giving an account of an interaction with Plaintiff.

<u>DEFENDANT #2) ERICA ESTES</u>
Aka Ms. Doe #2
(along with Meghan Calabro or Ms. Doe #1 known as "The Doe Sisters")
Coordinator of Member Services, UREC
Harrisonburg VA 22807
<u>ESTESEA@JMU.EDU</u>    568-8742

## 1. DISCRIMINATION ON THE BASIS OF AGE, RELIGION, SEX

9

*1st Amendment US Constitution (Free Exercise of Religion);* The Civil Rights Act of 1964 (Pub.L. 88–352, 78 Stat. 241, enacted July 2, 1964 -*outlawing discrimination on the basis of religion or sex in public accommodations); **Title IX of the Education Amendments of 1972, as** amended, (20 USC § 1681) – prohibiting discrimination on the basis of sex in education); **The Age Discrimination Act of 1975**, as amended (42 USC § 6101); Virginia Human Rights Act - § 2.2-3900.*

  Since Estes claim of Sexual Harassment is bogus-there is no substance to it; it is a fraud-then her motivation to attack Defendant can be logically presumed to arise from other grounds. And this attack must arise from hatred rooted in prejudices against Plaintiff because he is a 1) man making romantic overtures to her, which she admits although not giving the truth of the matter; 2) he is an older man-which in her mind should stay in an older man's "place" (meaning look for romance only with older women)-and her intent was to put him in his place by bringing up a defamatory claim against him, and 3) as she is particularly aware of his religious beliefs, and aware that he acts upon his beliefs and justifies his behavior, being grounded in his faith and standing in reliance upon the Word of God for justification for his deeds in his interaction with her, which belief she despises and has been taught to despise probably her whole life by culture, this also motivated her to attack Plaintiff as well.

## 2. DENIAL OF DUE PROCESS

  *5th Amendment US Constitution; 14th Amendment, US Constitution. USC Title IX. VA Constitution, Bill of Rights, Section 11. JMU Student Handbook/Rights, Roles and Responsibilities/Accused Student Rights (Sexual Misconduct) [**https://www.jmu.edu/osarp/handbook/OSARP/student-rights.shtml#accused-sexual-misconduct].***

  The US and VA Constitutions provide that no person shall be deprived of life, liberty or property without due process of law. Plaintiff asserts that for purposes of the JMU Student Handbook due process procedures Plaintiff is a "student"-or should have been accorded the same rights as a student in the governance of sexual misconduct cases.

  Estes denied Plaintiff Due Process in that she had a conflict of interest that disqualified her from handling Calabro's complaint-and she should have found a disinterested party in UREC management to process Calabro's claim.

## 3. FRAUD

  *18 USC – 1001: Statements or Entries General:* (a1) Estes falsified a material fact and; (a2) made a materially false, fictitious and fraudulent statement or representation, and; (a3) used a false writing or document knowing the same to contain materially false, fictitious, or fraudulent statements or entries. Plaintiff asserts that, if for no other direct reason, the JMU campus comes under federal jurisdiction because of the US government's pervasive financial and ideological influence over campus affairs, especially the US Department of Education in Title IX matters. Estes perpetrated a fraud. She contributed to Calabro's fraudulent testimony and added her own spurious, disingenuous claim-utilizing state resources and poor protocol and policy as a weapon. She misused and abused government power in persecution of a citizen. She is guilty of misbehavior in office. It is clear that taking in hand the apparatus of the state in Sexual Misconduct law and wielding it against an adversary is an attack. It is an assault by tangential means. She persisted in an intransigent prosecution of an abusive claim without grounds. She deliberately

10

triggered the JMU Automatic Reporting of sexual misconduct policy with a spurious, disingenu-
ous claim-using state resources and poor protocol and policy as a weapon. She misused and
abused government power in persecution of a citizen. She is guilty of misbehavior in office.
*Code of Virginia: Forging a Public Record: 18.2-168.* Estes cause a false public record to be
created by providing misleading and false testimony in an interview with Ms. Meck. This record
was later used to damage Plaintiff.
*Code of Virginia: Forgery, uttering, other writings: 18.2-172.* Estes communicated a fraudu-
lent statement to Meck and UREC officials resulting in harm to Plaintiff. Citizens in general
need to be protected from abuse by campus officials who go outside of the law and depart from
their own policy guidelines in order to persecute those they don't like. Men need to be protected
from unscrupulous female attacks and government complicity in them. This is exactly what this
case is.
*USC Title IX.* Calabro fraudulently abused Title IX of Federal Code and violated Title IX by
generating a veiled attack in the guise of a legitimate Sexual Harassment complaint-or "attack
complaint" - a contrived weapon and means of sexual harassment by manipulating government
officials into adverse action against Plaintiff.

## 4. DEFAMATION/PRESENTING IN A FALSE LIGHT

*28 US Code-4101. Code of Virginia 18.2-417* - Slander and libel. *Virginia Common Law. Code
of Virginia 18.2-417* - Slander and libel. *Virginia Common Law.* Estes' actions, writings and
statements were false, and have caused damage to my reputation-perhaps permanent damage. I
believe she played the Devil's advocate with Calabro and manipulated and encouraged her to
make the sexual misconduct complaint. It is likely she encouraged Calabro to exaggerate and
falsify her report in order for it to be of sufficient severity to cause UREC management and Title
IX officials to act upon it. She had a distinct conflict of interest in managing Calabro's com-
plaint, and should have recused herself. She may be more liable for blame than Calabro as the
actual root source of all the trouble we deal with today. If she had told the truth we would proba-
bly not be here in court today.
    Her testimony to Meck is full of prevarications, exaggerations and deceits. She caused
me much humiliation and shame by her false testimony because I was thrown out of UREC with
the repute of a sex pervert-in front of the whole community. She's put a blot upon my good
name. Her actions have presented me in a false light, resulted in criticism, dishonor, shame, con-
demnation and loss of standing in the community. Others at UREC have hated me because of
her deeds. I have lost tangible rights and privileges as a result of her malicious, intentional
deeds. The decision by UREC officials to revoke my membership permanently was a defama-
tion resulting partly from Estes' defamatory report. Her dirty deeds are inexorably linked to the
defamatory discipline inflicted upon me by UREC management in the permanent revocation of
my membership. Her words are an insult and a dishonor. She is a fundamental part of the tripar-
tite core (Calabro-Estes-Robinson) of falsifiers at the essence of this fiasco who have been in-
credibly damaging to me and is wasting the time and damaging the reputations of her colleagues-
who may be in danger of losing their jobs because of her.
    Plaintiff asserts that Defendant's defamation was "published" in that anyone could obtain
a copy of it under FOIA. It was and is available to the public. It was also publically communi-
cated in that the falsity of it was partly responsible for the public defamation of Plaintiff in the
unjustified lifetime revocation of his UREC membership. It is irrevocably linked in to the UREC

11

revocation and cannot be separated from it. Plaintiff also asserts that in practical terms any information available to any person in any organization is at risk for unauthorized dissemination and is most likely published by whisper and word of mouth. Statements made within an organization are not necessarily secret. The results of those statements are public, and if the defamatory language of Defendant was responsible, the Defendant is responsible for defamation. Defendant's defamation was used as part of a public proceeding the results of which are well known to the campus community.

## 5. BREACH OF PUBLIC TRUST, ABUSE OF POWER. CORRUPTION. FALSE ENTRIES IN A PUBLIC RECORD. MALFEASANCE.

*USC Common Law. Code of Virginia 2.2-3100, 3102.* "The General Assembly...[recognizing]...our system of representative government is dependent upon its citizens maintaining the highest trust in their public officers and employees, finds and declares that our citizens are entitled to be assured that the judgment of public officers will be guided by a law that defines and prohibits inappropriate conflicts..."

Estes as a public officer failed to act truthfully and honestly by giving false testimony about Plaintiff. She acted dishonorably under the auspices of the State of Virginia and JMU. She betrayed the trust of a citizen (Plaintiff) while acting in an official capacity and being paid for by the citizen's tax dollars. She participated in official duties while having a conflict of interest. Estes is guilty of a betrayal of public trust, malfeasance and misconduct in public office and defamation in the performance of official duties as a public employee. She defamed Plaintiff through a false accusation of sexual misconduct and many lies used to inflate and distort the truth.

*Code of Virginia Title 2.2 Chapter 31; §2.2-3120 CC §18.2-472.* In testify falsely in her account of Plaintiff's behavior, Estes contributed to, inspired and was accessorial in Robinson's creating a fictional account of a meeting with Plaintiff and publishing it as a Report of Conversation. She also acted in the same capacity with Meck's report. This essentially lead to forged entries in a public record because the false records of Meck and Robinson relied upon Estes' false testimony.

## 6. RETALIATION

*USC Title IX. Code of Virginia 2.2-3103:* "No..officer...employee...of a state or local government agency shall... 10. Use his public position to retaliate..against any person for expressing views on matters of public concern or for exercising any right that is otherwise protected by law..." Estes retaliated against Plaintiff because Plaintiff's exercised his civil rights of freedom of speech and religion in an interaction with Defendant Calabro.

## 7. CONSPIRACY

*18 USC – 241.* Meghan Calabro and Erica Estes conspired to injure, oppress, threaten and intimidate Plaintiff in the free exercise or enjoyment of rights or privileges secured to him by the Constitution or laws of the United States, and because of his having exercised the protected rights of age, sex, faith and free speech. It seems evident because of the similarities of their testimonies that they conspired together to falsify their reports, to inflate and distort their accounts of

interactions with Plaintiff-in order to successfully bring about Title IX action against Plaintiff that would succeed on false merits. So, there are two counts of conspiracy active here-one of the two Does acting in concert to oppress Plaintiff, and one including all nine Defendants united under an umbrella of campus chauvinism-explained in next paragraph.

All Defendants are guilty of operating under a loose, perhaps unspoken conspiracy against Plaintiff to defraud him of rights in that no word was ever spoken on Plaintiff's behalf; there was no resistance or opposition to the negative actions against Plaintiff; there appears to have been no independent effort at assessing the merits of the case against Plaintiff or the merits of Plaintiff's objections to what happened to him. There was no effort to interview Plaintiff independently-which should have been undertaken by JMU officials in the President's Office as well as UREC when they heard that there were problems developing in the prosecution of the charges, because of Plaintiff's complaints. It was abundantly evident that Plaintiff had been denied due process by Title IX officials, which fact Plaintiff specifically noted in communication to UREC officials. All campus participants acted in concert, united together like one huge pack of wolves against Plaintiff, perhaps under the tacit recognition that a successful bureaucrat never contradicts or opposes another bureaucrat. It might be said that a static or constant situation of conspiracy against all outside opposition exists on the JMU campus-which sets up a natural condition of oppression and injustice against all who, like Plaintiff, are considered outsiders or offenders. An "all for one and one for all" club seems to exist, with campus bureaucrats as exclusive members. Justice in campus proceedings may only be obtained by setting up an independent advocacy center for those who are opposed by JMU bureaucrats.

## 8. INVASION OF PRIVACY

*4TH Amendment US Constitution; 42 USC 1983. Virginia Common Law.* As a citizen I have the right to be secure in my personal, to conduct personal, private business free from government interference and regulation. Government officials need to mind their own business-which they failed to do.

Calabro's and Este's revelation of my very private communication to their peers, superiors and by extension the public is a gross invasion of my privacy-because the communication I made was of a very private and discreet nature, and never should have been publically revealed or scrutinized. Furthermore they inflated and distorted-and outright lied about-my communication so that a false name and reputation adhered to me that was not true and consistent with my actual character. They did not reveal accurately my actual communication, but created a fictional account of my communication. Additionally by prevaricating the issue into the public sphere they have forced me to litigate in order to restore my reputation, bringing me against my will into public light, opening up personal issues before strangers that should have remained private.

Calabro and Estes invaded my constitutional right to privacy by intruding into my personal life-which is not available for government inspection and approval-and further subjecting me to a public ordeal that was entirely uncalled for.

## 9. VIOLATION OF FREE SPEECH

*1st Amendment, US Constitution. VA Constitution: Article 1-Section 12. VA Code: Chapter 1 of Title 23 numbered 23-9.2:13.* Plaintiff asserts that JMU for the purposes of Title 23 may not unduly restrict free speech in indoor spaces unless with good cause.

Plaintiff asserts that under free speech guarantees he has the right to respectfully, honorably and reasonably socialize with females and enquire as to the prospect of marriage. Calabro and Estes violated Plaintiff's free speech rights when they initiated adverse legal action, in the form of sexual harassment complaints, against Plaintiff, when Plaintiff was merely exercising his right to free speech and behaving honorably and reasonably. Plaintiff must remain free to discuss personal and even sexual topics with university females, and make respectful propositions when he sees fit without fear of retaliation by government means. The state is neither a husband nor a father-and coeds may not use the government in their place. Men must be free to engage in normal socialization without fear of reprisals or false claims. Defendants Calabro's and Estes' complaints, and the resulting Title IX persecution, are violations of Plaintiff's my right of free speech because Plaintiff had the right to socialize normally in the course of looking for a wife-at any reasonable time or place-including while Calabro and Estes were on duty at UREC.

Citizens of this nation and Plaintiff I can't live in fear that approaching women about the topic of marriage is going to result in some kind of harmful campus quasi-legal prosecution. This fear impedes liberty. Plaintiff cannot live in fear that a beautiful princess Cinderella is going to suddenly transform in a poof and a puff of smoke into a wicked old witch astride a broomstick-as Clabro and Estes did. A citizen cannot live in fear of unfounded, bogus complaints by others which are then zealously processed by campus officials, as happened to Plaintiff, and turn a benign conversation into a matter for the Spanish Inquisition. Plaintiff cannot be required to contact a lawyer so that he can intervene and communicate with the proper legaleeze every time Plaintiff is interested in a girl. Older men have rights they may freely exercise to seek marriages with young girls, and these rights must be respected-whether they like it or not.

## 10.  INTENTIONAL/UNINTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

*14th Amendment, US Constitution. Right of persons to be secure in their persons.* Estes inflicted emotional distress by lying about Plaintiff's behavior and communication when giving an account of interactions with Plaintiff.

DEFENDANT #3)  AMY M. SIROCKY-MECK
Associate Director, University Health Center
Health Education, Advocacy and Prevention
Title IX Support for Students
University Health Center, MSC 7901
Harrisonburg VA  22807
568-6178

Meck was a chief actor in the drama resulting in the adverse actions taken against Plaintiff. She was in a key position to aggressively and competently examine the accusations of the Does, determine that they were false, and stop them. However she in effect ended up acting as an accessory and contributor to the wrongs of the Does. She acted as a conduit and even a bullhorn for false information from them. She was a pipeline for the wrongdoing of the Does. She

accepted and passed on Calabro's accusations-from Estes' testimony-without an interview-putting Estes hearsay statements into a public record. Her sloppy, careless and highly prejudicial work as an "advocate" for the Does contributed to or resulted in the injustice done to Plaintiff, as UREC officials relied on her opinion when making their decision to revoke Plaintiff's UREC membership. Therefore she is partially responsible and an integral part of the harmful acts the Does committed. She effectively joined the Doe Sisters in an Attack Complaint.

## 1. DISCRIMINATION ON THE BASIS OF AGE, RELIGION, SEX

*1st Amendment US Constitution (Free Exercise of Religion);* The Civil Rights Act of 1964 (Pub.L. 88–352, 78 Stat. 241, enacted July 2, 1964 *-outlawing discrimination on the basis of religion or sex in public accommodations); **Title IX of the Education Amendments of 1972**, as amended, (20 USC § 1681) – prohibiting discrimination on the basis of sex in education); **The Age Discrimination Act of 1975**, as amended (42 USC § 6101); Virginia Human Rights Act - § 2.2-3900.*

Meck joined in sympathy with the Does in their corrupt attack upon Plaintiff. She is therefore accountable for having acted with the same malice and motives.

## 2. DENIAL OF DUE PROCESS

5th Amendment US Constitution; *14th Amendment, US Constitution. USC Title IX. VA Constitution, Bill of Rights, Section 11. JMU Student Handbook/Rights, Roles and Responsibilities/Accused Student Rights (Sexual Misconduct) [**https://www.jmu.edu/osarp/handbook/OSARP/student-rights.shtml#accused-sexual-misconduct].***

The US and VA Constitutions provide that no person shall be deprived of life, liberty or property without due process of law. Plaintiff asserts that for purposes of the JMU Student Handbook due process procedures Plaintiff is a "student"-or should have been accorded the same rights as a student in the governance of sexual misconduct cases.

Meck accepted hearsay testimony from Estes and did not subject Estes' complaint to rigorous standards and procedures that followed a pattern of due process that protected the accused.

## 3. FRAUD

*18 USC – 1001: Statements or Entries General:* (a1) Meck created a record of her interview with Estes that contained many deceptive statements and prevarications from Estes, which Meck should have known and perhaps was well aware were false statements. As a whole her report was a falsified material fact. Meck (a2) made a materially false, fictitious and fraudulent statement (in the report as a whole) or representation when she sent this report to UREC officials, and; (a3) used a false writing or document (her report) knowing the same to contain materially false, fictitious, or fraudulent statements or entries. Meck was a hired gun for Estes and Calabro instead of an independent official acting in the best interests of the accused (Plaintiff) as well as the accusers (Calabro and Estes).

Plaintiff asserts that, if for no other direct reason, the JMU campus comes under federal jurisdiction because of the US government's pervasive financial and ideological influence over campus affairs, especially the US Department of Education in Title IX matters.

15

*Code of Virginia: Forgery, uttering, other writings: 18.2-172.* Meck communicated a fraudulent statement in her report to UREC officials resulting in harm to Plaintiff. Meck issued a report and recommendation without substantial basis. She received a hearsay report from Estes and acted upon it. She had no interview with Calabro yet accepted Estes' statements on her behalf. She acted as an advocate for a fraudulent claim. She hyper-sensationalized the effects of Plaintiff's actions. She requested no interview with Plaintiff to hear the other side of the story. She effectively colluded with Defendants Estes and Calabro to defraud Plantiff of civil rights and valuable property.

Citizens in general need to be protected from abuse by campus officials who go outside of the law and depart from their own policy guidelines in order to persecute those they don't like. Men need to be protected from unscrupulous female attacks and government complicity in them. This is exactly what this case is.

## 4. DEFAMATION/PRESENTING IN A FALSE LIGHT

*28 US Code-4101. Code of Virginia 18.2-417 -* Slander and libel. *Virginia Common Law. Code of Virginia 18.2-417 -* Slander and libel. *Virginia Common Law.* Meck's actions, writings and statements were false in that her testimony is wrong. She has caused damage to my reputation-perhaps permanent damage. Her duty was to do more than tearfully and sympathetically hold the hand of weeping females as they poured out their hearts with complaint of what horrible men had done to them. She was responsible for exacting the truth out of Estes, and Calabro is she could have secured an interview. She should have interviewed Calabro before issuing a statement. I believe she acted as a mere conduit for Calabro's and Este's defamation-but she should have filtered out their prevarications. It is likely she ignored the fact that Defendants Calabro and Estes were lying. She didn't call Plaintiff in to explain or give his story. She may have encouraged Estes to exaggerate and falsify her testimony in order for it to be of sufficient severity to cause UREC management and Title IX officials to act be able to issue a punishment upon Plaintiff.

Her report of Estes' interview merely transfers Estes' prevarications, exaggerations and deceits. There is no statement in her report as to whether she considered the veracity of Estes' testimony, or did anything at all to warn her of the consequences of false testimony. We are not told why she could not secure an interview with Calabro.

She caused me much humiliation and shame by her false testimony because I was thrown out of UREC with the repute of a sex pervert-in front of the whole community. She's helped put a blot upon my good name, and I think it may have been deliberately done so in her bitterness as a committed misandrist. Her actions have presented me in a false light, resulted in criticism, dishonor, shame, condemnation and loss of standing in the community. Others at UREC have hated me because of her deeds. I have lost tangible rights and privileges as a result of her deeds. The decision by UREC officials to revoke my membership permanently was a defamation resulting partly from Meck's mere transfer of Estes' defamatory report. Her shoddy work and possible dirty deeds are inexorably linked to the defamatory discipline inflicted upon me by UREC management in the permanent revocation of my membership. She lubed up the gears of the injustice machinery by enabling the Estes falsifier to proceed unhindered in her diabolical plan to undo Plaintiff. She should have made an effort to interrogate Estes. Is she had we might not have arrived as this point of lawsuit today, where the reputations of her colleagues and the jobs of Estes and Calabro may be in danger of because of her. She should have shaken these wicked girls out of their bad behavior, not act as a bullhorn for their lies. Her careless and biased work, and

16

fawning before Robinson, who may have privately encouraged her to write a slam of Defendant, is a key piece of the injustice infrastructure that resulted in injury to Plaintiff.

Plaintiff asserts that Defendant's defamation was "published" in that anyone could obtain a copy of it under FOIA. It was and is available to the public. It was also publically communicated in that the falsity of it was partly responsible for the public defamation of Plaintiff in the unjustified lifetime revocation of his UREC membership. It is irrevocably linked in to the UREC revocation and cannot be separated from it. Plaintiff also asserts that in practical terms any information available to any person in any organization is at risk for unauthorized dissemination and is most likely published by whisper and word of mouth. Statements made within an organization are not necessarily secret. The results of those statements are public, and if the defamatory language of Defendant was responsible, the Defendant is responsible for defamation. Defendant's defamation was used as part of a public proceeding the results of which are well known to the campus community.

## 5. DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

*18 USC-242. Virginia Common Law.* Under the auspices of Title IX Meck acted against Plaintiff, however without adequate vetting of the Doe's complaints. She transferred Defendant Estes false testimony to UREC managers, prejudicing and influencing them to act against Plaintiff. She is therefore an accessory to the acts of UREC officials against Plaintiff. She was possibly aware of and in collusion with Defendant Robinson's plan to forge a record of an interview with Plaintiff. As a result Plaintiff was deprived of rights protected under the Constitution without adequate or legitimate use of the law. She essentially joined in league with the Does and Robinson as an accomplice.

## 6. BREACH OF PUBLIC TRUST, ABUSE OF POWER. CORRUPTION. FALSE ENTRIES IN A PUBLIC RECORD. MALFEASANCE.

*USC Common Law. Code of Virginia 2.2-3100, 3102.* "The General Assembly…[recognizing]…our system of representative government is dependent upon its citizens maintaining the highest trust in their public officers and employees, finds and declares that our citizens are entitled to be assured that the judgment of public officers will be guided by a law that defines and prohibits inappropriate conflicts…"

Meck as a public officer failed to act truthfully and honestly by legitimizing Estes' false testimony about Plaintiff. She acted dishonorably under the auspices of the State of Virginia and JMU. She betrayed the trust of a citizen (Plaintiff) while acting in an official capacity and being paid for by the citizen's tax dollars.

*Code of Virginia Title 2.2 Chapter 31; §2.2-3120 CC §18.2-472.* In creating a complicit and dysfunctional report about Estes' interview Meck testified falsely in her account of Plaintiff's behavior, and gave official counsel against Plaintiff. Meck may have been accessorial in Robinson's creating a fictional account of a meeting with Plaintiff and publishing it as a Report of Conversation. Her report and recommendations to UREC officials are essentially forged entries in a public record because Meck's report relied upon an interview wherein she did not properly scrutinize Estes' allegations and perhaps deliberately overlooked the possibility they were false allegations.

17

## 7. RETALIATION

*USC Title IX. Code of Virginia 2.2-3103:* "No..officer...employee...of a state or local government agency shall... 10. Use his public position to retaliate..against any person for expressing views on matters of public concern or for exercising any right that is otherwise protected by law..." Robinson retaliated against Plaintiff because Plaintiff's exercised his right to file discrimination, sexual misconduct and freedom of speech violation claims. Robinson obstructed Plaintiff's presentation of these claims to the JMU Office of Equal Opportunity (OEO). Robinson received the claims on March 4, 2016, but he claimed he had not received anything as late as March 30, 2016. By forwarding the Does' complaints, without due diligence and adequate scrutinizing, Meck effectively lifted the sledge hammer the Does had given to her and brought it down on Plaintiff. Knowing the Does were misandrists retaliating against a male offender, she plied her own prejudices against Plaintiff by acting against Plaintiff. When she saw that the Does had commenced attacking Plaintiff, she became another dog in the fight-and because Plaintiff had acted in the cause of his faith and had freely expressed himself according to his protected rights.

## 8. CONSPIRACY

*18 USC – 241.* Meghan Calabro and Erica Estes conspired to injure, oppress, threaten and intimidate Plaintiff in the free exercise or enjoyment of rights or privileges secured to him by the Constitution or laws of the United States, and because of his having exercised the protected rights of age, sex, faith and free speech. It seems evident because of the similarities of their testimonies that they conspired together to falsify their reports, to inflate and distort their accounts of interactions with Plaintiff-in order to successfully bring about Title IX action against Plaintiff that would succeed on false merits. So, there are two counts of conspiracy active here-one of the two Does acting in concert to oppress Plaintiff, and one including all nine Defendants united under an umbrella of campus chauvinism-explained in next paragraph.

All Defendants are guilty of operating under a loose, perhaps unspoken conspiracy against Plaintiff to defraud him of rights in that no word was ever spoken on Plaintiff's behalf; there was no resistance or opposition to the negative actions against Plaintiff; there appears to have been no independent effort at assessing the merits of the case against Plaintiff or the merits of Plaintiff's objections to what happened to him. There was no effort to interview Plaintiff independently-which should have been undertaken by JMU officials in the President's Office as well as UREC when they heard that there were problems developing in the prosecution of the charges, because of Plaintiff's complaints. It was abundantly evident that Plaintiff had been denied due process by Title IX officials, which fact Plaintiff specifically noted in communication to UREC officials. All campus participants acted in concert, united together like one huge pack of wolves against Plaintiff, perhaps under the tacit recognition that a successful bureaucrat never contradicts or opposes another bureaucrat. It might be said that a static or constant situation of conspiracy against all outside opposition exists on the JMU campus-which sets up a natural condition of oppression and injustice against all who, like Plaintiff, are considered outsiders or offenders. An "all for one and one for all" club seems to exist, with campus bureaucrats as exclusive members. Justice in campus proceedings may only be obtained by setting up an independent advocacy center for those who are opposed by JMU bureaucrats.

## 9. INVASION OF PRIVACY

*4TH Amendment US Constitution; 42 USC 1983. Virginia Common Law.* As a citizen I have the right to be secure in my personal, to conduct personal, private business free from government interference and regulation. Government officials need to mind their own business-which they failed to do. Defendant Meck through careless and prejudiced work fanned the flames of the slander and libel fire started by Calabro and Estes through her "pipeline" involvement. Her work contributed to the overall invasion of Plaintiff's privacy that resulted when the injustice was done and then Plaintiff was forced to respond publically.

## 10. VIOLATION OF FREE SPEECH

*1st Amendment, US Constitution. VA Constitution: Article 1-Section 12. VA Code: Chapter 1 of Title 23 numbered 23-9.2: 13.* Plaintiff asserts that JMU for the purposes of Title 23 may not unduly restrict free speech in indoor spaces unless with good cause.

Plaintiff asserts that under free speech guarantees he has the right to respectfully, honorably and reasonably socialize with females and enquire as to the prospect of marriage. Calabro and Estes violated Plaintiff's free speech rights when they initiated adverse legal action, in the form of sexual harassment complaints, against Plaintiff, when Plaintiff was merely exercising his right to free speech and behaving honorably and reasonably. Although Calabro and Estes lied about their interactions with Plaintiff, Meck should have discounted or eliminated their testimony, and should have interview Plaintiff face-to-face in an effort to ascertain the truth of the matter. Therefore she is complicit in the Does violations of Plaintiff's right of free speech, as explained under the Violation of Free Speech sections under each of those Defendants.

## 11. DENIAL OF EQUAL PROTECTION

*14th Amendment, US Constitution.* Meck denied Plaintiff equal protection of the law by favoring Estes and Calabro. She heard only Estes face to face; accepted Calabro's email complaint; did not request input from Plaintiff that would have balanced the issues and exposed Calabro's and Estes' lies.

## 12. INTENTIONAL/UNINTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

*14th Amendment, US Constitution. Right of persons to be secure in their persons.* Calabro deliberately inflicted emotional distress by lying about Plaintiff's behavior and communication when giving an account of an interaction with Plaintiff.

### DEFENDANT #4) ROBERT M. GOLSON
Associate Director, Facilities and Operations, UREC
Harrisonburg VA 22807
GOLSONRM@JMU.EDU    568-8717

### DEFENDANT #5) ERIC C. NICKEL
Director, UREC
UREC 209, MSC 3901

19

Harrisonburg, VA 22807
NICKELEC@JMU.EDU 568-8702

DEFENDANT #6) STEVE BOBBITT
Associate Director for Programming, UREC
UREC 207, MSC 3901
Harrisonburg VA 22807
BOBBITSR@JMU.EDU 568-8707

These Defendants were in a position to ameliorate, mitigate or put a halt to the adverse actions against Plaintiff, but failed to do to. As top UREC officials it was their final decision. Despite my protestations of innocence and informing them of the failure of the Title IX Administrator to utilized Due Process, they ignored my pleas and followed the recommendations of Robinson and Meck. They did not contact me for a face-to-face interview, which why should have. As far as I know they did not interview the Does to prove out whether their claims were legitimate. In light of my communication and the well established fact of litigations that resentful females were bringing accusations against males, a panel should have been appointed to interview Calabro and Estes. But these officials acted as mere silent, assenting rubber stampers of the Calabro-Estes-Meck-Robinson initiative. Therefore these Defendants are partly responsible for the wrongs of the Does. They allowed themselves to be maneuvered and manipulated by the Does as the Does used fraudulent attack complaints against Plaintiff. UREC managers are in violation as well as the Does because they were tools for the Does' discrimination against me on the basis of protected rights.

These officials did not publish guidelines defining harassment for participants at UREC, leaving a vacuum of critical information that would have warned Plaintiff and others of the potential consequences of behavior.

As well as being contributors as the result of action or inaction during the attack against Plaintiff, these Defendants were in a unique position to perceive and assess critical facts, namely that three women (Calabro, Estes and Meck) and a black (Robinson) were against, and possibly ganging up against, Plaintiff as the result of sexual and racial antagonisms and prejudices. They should have realized that underlying hateful motives could have been at work. As such they should have closely examined the affair for fairness and justice-which they failed to do. So they're tied in by actions or lack of actions inextricably to the wrongs that were committed.

## 1. DISCRIMINATION ON THE BASIS OF AGE, RELIGION, SEX

*1st Amendment US Constitution (Free Exercise of Religion);* The Civil Rights Act of 1964 (Pub.L. 88–352, 78 Stat. 241, enacted July 2, 1964 *-outlawing discrimination on the basis of religion or sex in public accommodations);* ***Title IX of the Education Amendments of 1972, as*** *amended, (20 USC § 1681) – prohibiting discrimination on the basis of sex in education);* ***The Age Discrimination Act of 1975,*** *as amended (42 USC § 6101); Virginia Human Rights Act - § 2.2-3900.*

These officials are tied into the misdeeds of Calabro and Estes through their association as management superiors.

## 2. DENIAL OF DUE PROCESS

20

5th Amendment US Constitution; *14th Amendment, US Constitution. USC Title IX. VA Constitution, Bill of Rights, Section 11. JMU Student Handbook/Rights, Roles and Responsibilities/Accused Student Rights (Sexual Misconduct) [**https://www.jmu.edu/osarp/handbook/OSARP/student-rights.shtml#accused-sexual-misconduct].***

       The US and VA Constitutions provide that no person shall be deprived of life, liberty or property without due process of law. Plaintiff asserts that for purposes of the JMU Student Handbook due process procedures Plaintiff is a "student"-or should have been accorded the same rights as a student in the governance of sexual misconduct cases.

       These officials did not subject the claims of the Does and the reports of Meck and Robinson to rigorous examination in an adequate due process procedure for protection of Plaintiff. After being informed that Title IX Administrator Robinson failed to follow Due Process procedures for addressing the issues with Plaintiff, these officials refused to overturn their decision of adverse action against Plaintiff. There was no balance in the administration of adverse action against Plaintiff, as the only information considered by UREC officials was negative inputs against Plaintiff.

## 3. DEFAMATION/PRESENTING IN A FALSE LIGHT

*28 US Code-4101. Code of Virginia 18.2-417* - Slander and libel. *Virginia Common Law. Code of Virginia 18.2-417* - Slander and libel. *Virginia Common Law.* These Defendants revoked Plaintiff's UREC membership as a result of Estes, Calabro's, Robinson's and Meck's testimony. The revocation was unjustified, and was a defamation. They should have been suspicious of the ridiculous testimony and reports that all appeared contrived against Plaintiff. They mismanaged this affair, possibly because of their own prejudices against Plaintiff, and should be held liable.

       They caused me much humiliation and shame by throwing me out of UREC like some dirty rag. They've put a blot upon my good name. Their decision to revoke my UREC membership presented me in a false light, resulted in criticism, dishonor, shame, condemnation and loss of standing in the community. Others at UREC have hated me because of this situation. They did not call Plaintiff in for an interview to explain his side of the story. They were informed that Title IX did not follow due process yet proceeded to punish Plaintiff anyway. They should have found out the answers to many troubling questions before taking action against Plaintiff.

## 4. DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

*18 USC-242. Virginia Common Law.* Although aware that there were legal problems with Title IX Administrator's decision that Plaintiff had committed sexual misconduct-and should have been suspicious of possible problems with Meck's and the Does' testimonies-these officials acted knowing the sexual misconduct issue was on shaky ground-and without securing any input from Plaintiff.

## 5. BREACH OF PUBLIC TRUST, ABUSE OF POWER. CORRUPTION. FALSE ENTRIES IN A PUBLIC RECORD. MALFEASANCE.

*USC Common Law. Code of Virginia 2.2-3100, 3102.* "The General Assembly…[recognizing]…our system of representative government is dependent upon its citizens maintaining the

21

highest trust in their public officers and employees, finds and declares that our citizens are entitled to be assured that the judgment of public officers will be guided by a law that defines and prohibits inappropriate conflicts…"

These defendants as public officers failed to act truthfully and honestly toward the general public and Plaintiff by making a decision against Plaintiff based upon false and misleading evidence provided by Meck, Robinson and the Does. They acted dishonorably under the auspices of the State of Virginia and JMU. They betrayed the trust of a citizen (Plaintiff) while acting in an official capacity and being paid for by the citizen's tax dollars.

*Code of Virginia Title 2.2 Chapter 31; §2.2-3120 CC §18.2-472.* Their decision to revoke Plaintiff's membership is essentially a forged entry in a public record, because it is bogus, and they knowingly relied upon suspicious information when making that decision.

## 6. RETALIATION

*USC Title IX. Code of Virginia 2.2-3103:* "No…officer…employee…of a state or local government agency shall… 10. Use his public position to retaliate…against any person for expressing views on matters of public concern or for exercising any right that is otherwise protected by law…" Whether being manipulated by Defendants Robinson, Calabro, Meck and Estes or acting on their own accord these Defendants became a part of the retaliation of those Defendants using them.

## 7. CONSPIRACY

*18 USC – 241.* Meghan Calabro and Erica Estes conspired to injure, oppress, threaten and intimidate Plaintiff in the free exercise or enjoyment of rights or privileges secured to him by the Constitution or laws of the United States, and because of his having exercised the protected rights of age, sex, faith and free speech. It seems evident because of the similarities of their testimonies that they conspired together to falsify their reports, to inflate and distort their accounts of interactions with Plaintiff-in order to successfully bring about Title IX action against Plaintiff that would succeed on false merits. So, there are two counts of conspiracy active here-one of the two Does acting in concert to oppress Plaintiff, and one including all nine Defendants united under an umbrella of campus chauvinism-explained in next paragraph.

All Defendants are guilty of operating under a loose, perhaps unspoken conspiracy against Plaintiff to defraud him of rights in that no word was ever spoken on Plaintiff's behalf; there was no resistance or opposition to the negative actions against Plaintiff; there appears to have been no independent effort at assessing the merits of the case against Plaintiff or the merits of Plaintiff's objections to what happened to him. There was no effort to interview Plaintiff independently-which should have been undertaken by JMU officials in the President's Office as well as UREC when they heard that there were problems developing in the prosecution of the charges, because of Plaintiff's complaints. It was abundantly evident that Plaintiff had been denied due process by Title IX officials, which fact Plaintiff specifically noted in communication to UREC officials. All campus participants acted in concert, united together like one huge pack of wolves against Plaintiff, perhaps under the tacit recognition that a successful bureaucrat never contradicts or opposes another bureaucrat. It might be said that a static or constant situation of conspiracy against all outside opposition exists on the JMU campus-which sets up a natural con-

dition of oppression and injustice against all who, like Plaintiff, are considered outsiders or offenders. An "all for one and one for all" club seems to exist, with campus bureaucrats as exclusive members. Justice in campus proceedings may only be obtained by setting up an independent advocacy center for those who are opposed by JMU bureaucrats.

## 8.INVASION OF PRIVACY

4TH *Amendment US Constitution; 42 USC 1983. Virginia Common Law.* As a citizen I have the right to be secure in my personal, to conduct personal, private business free from government interference and regulation. Government officials need to mind their own business-which they failed to do.

By refusing to deal directly with Plaintiff over the issues raised these officials contributed to the overall invasion of Plaintiff's privacy.

## 9. VIOLATION OF FREE SPEECH

*1st Amendment, US Constitution. VA Constitution: Article 1-Section 12. VA Code: Chapter 1 of Title 23 numbered 23-9.2: 13.* Plaintiff asserts that JMU for the purposes of Title 23 may not unduly restrict free speech in indoor spaces unless with good cause.

Plaintiff asserts that under free speech guarantees he has the right to respectfully, honorably and reasonably socialize with females and enquire as to the prospect of marriage. Calabro and Estes violated Plaintiff's free speech rights when they initiated adverse legal action, in the form of sexual harassment complaints, against Plaintiff, when Plaintiff was merely exercising his right to free speech and behaving honorably and reasonably. Plaintiff must remain free to discuss personal and even sexual topics with university females, and make respectful propositions when he sees fit without fear of retaliation by government means. The state is neither a husband nor a father-and coeds may not use the government in their place. Men must be free to engage in normal socialization without fear of reprisals or false claims. Defendants Calabro's and Estes' complaints, and the resulting Title IX persecution, are violations of Plaintiff's my right of free speech because Plaintiff had the right to socialize normally in the course of looking for a wife-at any reasonable time or place-including while Calabro and Estes were on duty at UREC. Citizens of this nation and Plaintiff I can't live in fear that approaching women about the topic of marriage is going to result in some kind of harmful campus quasi-legal prosecution. This fear impedes liberty. Plaintiff cannot live in fear that a beautiful princess Cinderella is going to suddenly transform in a poof and a puff of smoke into a wicked old witch astride a broomstick-as Clabro and Estes did. A citizen cannot live in fear of unfounded, bogus complaints by others which are then zealously processed by campus officials, as happened to Plaintiff, and turn a benign conversation into a matter for the Spanish Inquisition. Plaintiff cannot be required to contact a lawyer so that he can intervene and communicate with the proper legaleeze every time Plaintiff is interested in a girl. Older men have rights they may freely exercise to seek marriages with young girls, and these rights must be respected-whether they like it or not. In the process of the matter at JMU these Defendants were advised that there were substantial issues with the legality of the decision by Title IX that Defendant had committed sexual misconduct. When these UREC officials issued the order to revoke Plaintiff's membership, they were complicit in the plan to violate Plaintiff's free speech rights, as if they were a part of the Doe Gang (The Does-Meghan Calabro and Erica Estes).

23

## 10. DENIAL OF EQUAL PROTECTION

*14th Amendment, US Constitution. VA Constitution: Bill of Rights: Section 3 (Government is for common benefit.)* These Defendants denied Plaintiff equal protection of the law by effectively excluding him from the administration of justice process. They betrayed the public trust-because their employees could count on them, but non-employees (the public and the Plaintiff) could not.

## 11. SEXUAL HARASSMENT

*Title IX of the Education Amendments of 1972.* JMU and UREC sexually harassed Plaintiff. JMU and UREC have a policy of sexual harassment oppressive to males at UREC in that coed employees are permitted to dress in sexually enticing attire yet hold the option to prosecute under Title IX those males who naturally respond. The enticing attire coupled with the option to prose-cute creates a "Sex Trap", a hostile atmosphere for men. Plaintiff asserts that UREC and all campus employees should be required to wear sex/sensual-neutral attire. If they wear enticing and exciting attire then they communicate the desire for sexual adventure to men, and by doing so have in effect forfeited their right to complain about sexual harassment.
A sexually oppressive atmosphere against men is also in place in that females are not required to give clear and convincing evidence of harassment by communicating that sexual or romantic at-tention is not wanted. Females may deceive a male by feigning interest in attention, only to lodge a complaint at a later time. This is sexual harassment. JMU and UREC sexually harassed Plaintiff under these conditions.

## 12. INTENTIONAL/UNINTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

*14th Amendment, US Constitution. Right of persons to be secure in their persons.* UREC offi-cials inflicted emotional distress upon Plaintiff by taking punitive action against Plaintiff know-ing full well there was no substantial basis for it.

## DEFENDANT #7) JAMES MADISON UNIVERSITY

c/o Susan M. Wheeler, University Counsel
MSC 7614 Harrisonburg VA 22807
WHEEL2SL@JMU.EDU    568-5242

Jonathan R. Alger, President
c/o Art Dean, Executive Director, Campus and Community Access and Inclusion
Alumnae Hall 207, MSC 7611, Harrisonburg VA 22807
568-4506

As the umbrella entity and captain of the ship over campus officials, JMU is in part re-sponsible for all the illicit activities of all of its officials. They must therefore be brought into the light of inspection to bear a fair share of the blame for what has transpired under their watch.

## 1. DISCRIMINATION ON THE BASIS OF AGE, RELIGION, SEX

24

1st Amendment US Constitution (Free Exercise of Religion); The Civil Rights Act of 1964 (Pub.L. 88–352, 78 Stat. 241, enacted July 2, 1964 -*outlawing discrimination on the basis of religion or sex in public accommodations*); **Title IX of the Education Amendments of 1972, as amended, (20 USC § 1681)** – *prohibiting discrimination on the basis of sex in education); **The Age Discrimination Act of 1975, as amended (42 USC § 6101)**; Virginia Human Rights Act - § 2.2-3900.*

JMU is partly responsible in overall oversight of campus affairs, so is brought into this pleading as a Defendant. There may also be claims made against the President and/or particular members of the President's staff as discovery makes more information available.

## 2. DENIAL OF DUE PROCESS

5th Amendment US Constitution; *14th Amendment, US Constitution. USC Title IX. VA Constitution, Bill of Rights, Section 11. JMU Student Handbook/Rights, Roles and Responsibilities/Accused Student Rights (Sexual Misconduct) [**https://www.jmu.edu/osarp/handbook/OSARP/student-rights.shtml#accused-sexual-misconduct].**

The US and VA Constitutions provide that no person shall be deprived of life, liberty or property without due process of law. Plaintiff asserts that for purposes of the JMU Student Handbook due process procedures Plaintiff is a "student"-or should have been accorded the same rights as a student in the governance of sexual misconduct cases.

JMU failed in effective oversight of the Title IX and OEO offices in that it allowed the result of due process violations to stand. It took no action to discipline Robinson for Due Process violations. It took no action to give Plaintiff adequate Due Process when it was obvious there were huge flaws in the way Robinson had handled the case.

## 3. DEFAMATION/PRESENTING IN A FALSE LIGHT

*28 US Code-4101. Code of Virginia 18.2-417 -* Slander and libel. *Virginia Common Law. Code of Virginia 18.2-417 -* Slander and libel. *Virginia Common Law.* University officials were aware of the ongoing fiasco with OEO and Title IX, and with the problems concerning the investigation of Plaintiff's Discrimination Claim, and the Title IX lack of Due Process in arriving at a decision of sexual misconduct-but apparently did nothing to stop the process. They and JMU are responsible for the inequities that occur on their watch.

## 4. DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

*18 USC-242. Virginia Common Law.* JMU is partly responsible for the action of subordinates.

## 5. FRAUD

*18 USC – 1001: Statements or Entries General. Code of Virginia: Forging a Public Record: 18.2-168. Code of Virginia: Forgery, uttering, other writings: 18.2-172.* JMU is partly responsible for the illegal actions of subordinates. Plaintiff asserts that, if for no other direct reason, the JMU campus comes under federal jurisdiction because of the US government's pervasive financial and ideological influence over campus affairs, especially the US Department of Education in Title IX matters.

Citizens need to be protected from abuse by campus officials who go outside of the law and depart from their own policy guidelines in order to persecute those they don't like-and JMU did not provide this protection. Under JMU's oversight there was abundant official support for the accusers (Defendants) but none whatsoever for the accused (Plaintiff). Men need to be protected from unscrupulous female attacks and government complicity in them.

## 6. RETALIATION

*USC Title IX. Code of Virginia 2.2-3103:* "No..officer…employee…of a state or local government agency shall… 10. Use his public position to retaliate..against any person for expressing views on matters of public concern or for exercising any right that is otherwise protected by law…" JMU became an integral part, as it had supervisory and management control over the other Defendants, of other Defendants' culpability in this matter, and/or acted on their own accord to retaliate against Plaintiff. JMU failed to stop the wheels of injustice, or intervene on Plaintiff's behalf, when it had clear evidence of wrong being done against Plaintiff-specifically when Plaintiff's claim to OEO was obstructed-in an act of retaliation against Plaintiff for expressing his views, acting upon his beliefs and speaking freely.

## 7. CONSPIRACY

*18 USC – 241.* Meghan Calabro and Erica Estes conspired to injure, oppress, threaten and intimidate Plaintiff in the free exercise or enjoyment of rights or privileges secured to him by the Constitution or laws of the United States, and because of his having exercised the protected rights of age, sex, faith and free speech. It seems evident because of the similarities of their testimonies that they conspired together to falsify their reports, to inflate and distort their accounts of interactions with Plaintiff-in order to successfully bring about Title IX action against Plaintiff that would succeed on false merits. So, there are two counts of conspiracy active here-one of the two Does acting in concert to oppress Plaintiff, and one including all nine Defendants united under an umbrella of campus chauvinism-explained in next paragraph.

All Defendants are guilty of operating under a loose, perhaps unspoken conspiracy against Plaintiff to defraud him of rights in that no word was ever spoken on Plaintiff's behalf; there was no resistance or opposition to the negative actions against Plaintiff; there appears to have been no independent effort at assessing the merits of the case against Plaintiff or the merits of Plaintiff's objections to what happened to him. There was no effort to interview Plaintiff independently-which should have been undertaken by JMU officials in the President's Office as well as UREC when they heard that there were problems developing in the prosecution of the charges, because of Plaintiff's complaints. It was abundantly evident that Plaintiff had been denied due process by Title IX officials, which fact Plaintiff specifically noted in communication to UREC officials. All campus participants acted in concert, united together like one huge pack of wolves against Plaintiff, perhaps under the tacit recognition that a successful bureaucrat never contradicts or opposes another bureaucrat. It might be said that a static or constant situation of conspiracy against all outside opposition exists on the JMU campus-which sets up a natural condition of oppression and injustice against all who, like Plaintiff, are considered outsiders or offenders. An "all for one and one for all" club seems to exist, with campus bureaucrats as exclusive members. Justice in campus proceedings may only be obtained by setting up an independent advocacy center for those who are opposed by JMU bureaucrats.

26

## 8. INVASION OF PRIVACY

*4TH Amendment US Constitution; 42 USC 1983. Virginia Common Law.* As a citizen I have the right to be secure in my personal, to conduct personal, private business free from government interference and regulation. Government officials need to mind their own business-which they failed to do.

These officials should not have referred Calabro's and Estes' complaints to Title IX, but should have handled the matter at UREC. They should have put a stop to the matter through a thorough interrogation of the Does-that would have revealed their lies. They contributed to the invasion of privacy of Plaintiff by transferring a private matter that could have been and should have been kept within UREC to the public sphere-through the examinations of Meck and Robinson.

## 9. VIOLATION OF FREE SPEECH

*1st Amendment, US Constitution. VA Constitution: Article 1-Section 12. VA Code: Chapter 1 of Title 23 numbered 23-9.2: 13.* Plaintiff asserts that JMU for the purposes of Title 23 may not unduly restrict free speech in indoor spaces unless with good cause. JMU had the duty to protect Plaintiff's right of free speech, but failed to do so. Under the auspices of Title IX they oversaw a bogus complaint and prosecution of Plaintiff. They are culpable for acts committed by their employees and officials because of lack of adequate management control and oversight.

## 10. DENIAL OF EQUAL PROTECTION

*14th Amendment, US Constitution. VA Constitution: Bill of Rights: Section 3 (Government is for common benefit.)* JMU denied equal protection of the laws by cutting off my access to JMU officials merely because I had exercised my right to obtain FOIA information. This policy hampered the investigation of my case and effectively cut off any hope of resolution of this matter out of court. I believe that the JMU policy to shut down departments to those filing for FOIA copies is in place to deliberately inflict pain upon those exercising their civil rights to sue the university and to obstruct the filing of litigation against the university.

## 11. BREACH OF PUBLIC TRUST, NEGLECT IN OVERSIGHT, CORRUPTION.

*USC Common Law. Code of Virginia 2.2-3100, 3102.* JMU failed to exercise adequate management and effective control over Title IX and OEO, where Robinson roamed loose as a Sex Police Czar, violating citizens' rights and engaging in corrupt practices. JMU failed to protect Plaintiff from frivolous, invalid and bogus sexual misconduct complaints. It effectively allowed a policy of age segregation and discrimination.

JMU and officials in the President's Office are possibly guilty of misconduct for not initiating an investigation of the OEO after Plaintiff complained about their obstruction of his Discrimination Complaint They have allowed OEO, Title IX and UREC to operate corruptly in dealing with me.

## 12. SEXUAL HARASSMENT

*Title IX of the Education Amendments of 1972.* JMU and UREC sexually harassed Plaintiff. JMU and UREC have a policy of sexual harassment oppressive to males at UREC in that coed employees are permitted to dress in sexually enticing attire yet hold the option to prosecute under Title IX those males who naturally respond. The enticing attire coupled with the option to prosecute creates a "Sex Trap", a hostile atmosphere for men. Plaintiff asserts that UREC and all campus employees should be required to wear sex/sensual-neutral attire. If they wear enticing and exciting attire then they communicate the desire for sexual adventure to men, and by doing so have in effect forfeited their right to complain about sexual harassment.

A sexually oppressive atmosphere against men is also in place in that females are not required to give clear and convincing evidence of harassment by communicating that sexual or romantic attention is not wanted. Females may deceive a male by feigning interest in attention, only to lodge a complaint at a later time. This is sexual harassment. JMU and UREC sexually harassed Plaintiff under these conditions.

## 13. INTENTIONAL/UNINTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

*14th Amendment, US Constitution. Right of persons to be secure in their persons.* JMU inflicted emotional distress by negligently administrating corrupt employees and officials, failing to prevent a bogus determination of Sexual Misconduct against Plaintiff.

DEFENDANT #8) JAMES ROBINSON
Title IX Administrator
1017 Harrison Street, JMAC 2
MSC 5802, Harrisonburg VA 22807
ROBINSJR@JMU.EDU          568-6991

## 1. DISCRIMINATION ON THE BASIS OF AGE, RELIGION, SEX

*1st Amendment US Constitution (Free Exercise of Religion);* The Civil Rights Act of 1964 (Pub.L. 88–352, 78 Stat. 241, enacted July 2, 1964 *-outlawing discrimination on the basis of religion or sex in public accommodations); Title IX of the Education Amendments of 1972, as amended, (20 USC § 1681) – prohibiting discrimination on the basis of sex in education); The Age Discrimination Act of 1975, as amended (42 USC § 6101); Virginia Human Rights Act - § 2.2-3900.*

Since Robinson joined in with the Does with a fraudulent report against Plaintiff, he is effectively a co-conspirator with them in damages done.

## 2. DENIAL OF DUE PROCESS

*5th Amendment US Constitution; 14th Amendment, US Constitution. USC Title IX. VA Constitution, Bill of Rights, Section 11. JMU Student Handbook/Rights, Roles and Responsibilities/Accused Student Rights (Sexual Misconduct) [https://www.jmu.edu/osarp/handbook/OSARP/student-rights.shtml#accused-sexual-misconduct].*

The US and VA Constitutions provide that no person shall be deprived of life, liberty or property without due process of law. Plaintiff asserts that for purposes of the JMU Student

Handbook due process procedures Plaintiff is a "student"-or should have been accorded the same rights as a student in the governance of sexual misconduct cases.

Robinson followed virtually no due process at all in administrating sexual misconduct law v Plaintiff. The decision he arrived at is therefore illegitimate and cannot stand. He communicated his decision to JMU officials at UREC and other offices despite the fact it was bogus. He failed to follow written guidelines for judging sexual misconduct cases and issued a finding regardless of the facts. He defamed my character and reputation by issuing a false, unjustifiable determination of sexual misconduct and then communicating it to UREC officials. Instead of following Due Process procedures for sexual misconduct cases, Robinson created a fictional account of a brief meeting with Plaintiff-and used that to justify his decision.

## 3. FRAUD

*18 USC – 1001: Statements or Entries General:* (a1) Robinson falsified a material fact and; (a2) made a materially false, fictitious and fraudulent statement or representation, and; (a3) used a false writing or document knowing the same to contain materially false, fictitious, or fraudulent statements or entries. Plaintiff asserts that, if for no other direct reason, the JMU campus comes under federal jurisdiction because of the US government's pervasive financial and ideological influence over campus affairs, especially the US Department of Education in Title IX matters.

Mr. Robinson lied to and deceived Plaintiff at an informal meeting-which as I recall was merely fifteen minutes or less in length. The purpose of the meeting was to discuss the charges made by Meghan Calabro. He did not tell me that Erica Estes had also made a charge of sexual misconduct. He said that there was no sexual harassment on my part in the incident with Calabro. He claimed that Calabro's testimony corroborated my own. He said in effect not to worry-he would write (JMU UREC official) Golson and my UREC membership should be reinstated soon. He secretly did exactly the opposite. He contrived a completely false account of our meeting. Then he recommended to Golson that my membership be revoked permanently.

Robinson joined with the Does in a conspiracy to defraud me of my rights. He gave preferential treatment to the Does, and biased treatment toward myself-denying me equal protection. He conspired a mischievous plan in advance of my interview with him to defeat me.

Robinson manufactured falsified information against Plaintiff in order to justify a finding of sexual misconduct. Plaintiff's actual behavior did not meet the Department of Education standards for sexual misconduct, namely his behavior: 1) was not sexual in nature, and; 2) was not unwelcome in that no clear sign of offense was given by accusers at any time, (on the contrary accusers sometimes gave deceptive signals that they enjoyed the attention) and; 3) did not deny or limit a student's ability to participate in or benefit from a school's education program.

*Code of Virginia: Forging a Public Record: 18.2-168.* Robinson produced a counterfeit document in the Report Of Conversation (ROC). He forged himself, making a bogus official record that mimicked his own truthful, official testimony and document but was in reality a fake.

*Code of Virginia: Forgery, uttering, other writings: 18.2-172.* Robinson communicated a fraudulent statement to UREC officials resulting in harm to Plaintiff. Also, as above, forged a document, making a fake, counterfeit official record to appear as the legitimate one.

Citizens in general need to be protected from abuse by campus officials who go outside of the law and depart from their own policy guidelines in order to persecute those they don't like. Men need to be protected from unscrupulous female attacks and government complicity in them. This is exactly what this case is.

## 4. DEFAMATION/PRESENTING IN A FALSE LIGHT

*28 US Code-4101. Code of Virginia 18.2-417* - Slander and libel. *Virginia Common Law. Code of Virginia 18.2-417* - Slander and libel. *Virginia Common Law.* Robinson's actions, writings and statements were false, and have caused damage to my reputation-perhaps permanent damage. He caused humiliation and shame because I was thrown out of UREC with the repute of a sex pervert-in front of the whole community. He's helped put a blot upon my good name. His Report On Conversation with Plaintiff is a virtually complete work of fiction. His actions have presented me in a false light, resulted in criticism, dishonor, shame, condemnation and loss of standing in the community. I have lost tangible rights and privileges as a result of his malicious, intentional deeds. The decision by UREC officials to revoke my membership permanently was a defamation resulting partly from Robinson's defamatory report. He is a key part of the tripartite core of liars that attacked Plaintiff and did him harm.

Plaintiff asserts that Defendant's defamation was "published" in that anyone could obtain a copy of it under FOIA. It was and is available to the public. It was also publically communicated in that the falsity of it was partly responsible for the public defamation of Plaintiff in the unjustified lifetime revocation of his UREC membership. It is irrevocably linked in to the UREC revocation and cannot be separated from it. Plaintiff also asserts that in practical terms any information available to any person in any organization is at risk for unauthorized dissemination and is most likely published by whisper and word of mouth. Statements made within an organization are not necessarily secret. The results of those statements are public, and if the defamatory language of Defendant was responsible, the Defendant is responsible for defamation. Defendant's defamation was used as part of a public proceeding the results of which are well known to the campus community.

## 5. DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

*18 USC-242. Virginia Common Law.* Under the auspices of Title IX Robinson acted against Plaintiff, however with a bogus decision and a forged document. Plaintiff was deprived of rights protected under the Constitution without adequate or legitimate use of the law.

## 6. BREACH OF PUBLIC TRUST, ABUSE OF POWER. CORRUPTION. FALSE ENTRIES IN A PUBLIC RECORD. MALFEASANCE.

*USC Common Law. Code of Virginia 2.2-3100, 3102.* "The General Assembly...[recognizing]...our system of representative government is dependent upon its citizens maintaining the highest trust in their public officers and employees, finds and declares that our citizens are entitled to be assured that the judgment of public officers will be guided by a law that defines and prohibits inappropriate conflicts..."

Robinson betrayed the trust of a citizen (Plaintiff) while acting in an official capacity and being paid for by the citizen's tax dollars-saying one thing then doing another.

*Code of Virginia Title 2.2 Chapter 31; §2.2-3120*
*CC §18.2-472.* In creating a fictional account of a meeting with Plaintiff and publishing it as a Report of Conversation, Robinson falsified entries in a public record.

Case 5:16-cv-00053-MFU   Document 1   Filed 08/26/16   Page 36 of 52   Pageid#: 36

## 7. RETALIATION

*USC Title IX. Code of Virginia 2.2-3103:* "No..officer…employee…of a state or local government agency shall… 10. Use his public position to retaliate..against any person for expressing views on matters of public concern or for exercising any right that is otherwise protected by law…" Robinson retaliated against Plaintiff because Plaintiff's exercised his right to file discrimination, sexual misconduct and freedom of speech violation claims. Robinson obstructed Plaintiff's presentation of these claims to the JMU Office of Equal Opportunity (OEO). Robinson received the claims on March 4, 2016, but he claimed he had not received anything as late as March 30, 2016.

## 8. CONSPIRACY

*18 USC – 241.* Meghan Calabro and Erica Estes conspired to injure, oppress, threaten and intimidate Plaintiff in the free exercise or enjoyment of rights or privileges secured to him by the Constitution or laws of the United States, and because of his having exercised the protected rights of age, sex, faith and free speech. It seems evident because of the similarities of their testimonies that they conspired together to falsify their reports, to inflate and distort their accounts of interactions with Plaintiff-in order to successfully bring about Title IX action against Plaintiff that would succeed on false merits. So, there are two counts of conspiracy active here-one of the two Does acting in concert to oppress Plaintiff, and one including all nine Defendants united under an umbrella of campus chauvinism-explained in next paragraph.

All Defendants are guilty of operating under a loose, perhaps unspoken conspiracy against Plaintiff to defraud him of rights in that no word was ever spoken on Plaintiff's behalf; there was no resistance or opposition to the negative actions against Plaintiff; there appears to have been no independent effort at assessing the merits of the case against Plaintiff or the merits of Plaintiff's objections to what happened to him. There was no effort to interview Plaintiff independently-which should have been undertaken by JMU officials in the President's Office as well as UREC when they heard that there were problems developing in the prosecution of the charges, because of Plaintiff's complaints. It was abundantly evident that Plaintiff had been denied due process by Title IX officials, which fact Plaintiff specifically noted in communication to UREC officials. All campus participants acted in concert, united together like one huge pack of wolves against Plaintiff, perhaps under the tacit recognition that a successful bureaucrat never contradicts or opposes another bureaucrat. It might be said that a static or constant situation of conspiracy against all outside opposition exists on the JMU campus-which sets up a natural condition of oppression and injustice against all who, like Plaintiff, are considered outsiders or offenders. An "all for one and one for all" club seems to exist, with campus bureaucrats as exclusive members. Justice in campus proceedings may only be obtained by setting up an independent advocacy center for those who are opposed by JMU bureaucrats.

## 9. INVASION OF PRIVACY

*4ᵀᴴ Amendment US Constitution; 42 USC 1983. Virginia Common Law.* As a citizen I have the right to be secure in my personal, to conduct personal, private business free from government interference and regulation. Government officials need to mind their own business-which they

31

failed to do.    Robinson invaded my constitutional right to privacy by intruding into my personal life-which is not available for government inspection and approval-and further subjecting me to a public ordeal through false testimony that was entirely uncalled for.

## 10. VIOLATION OF FREE SPEECH

*1st Amendment, US Constitution.  VA Constitution:  Article 1-Section 12.  VA Code: Chapter 1 of Title 23 numbered 23-9.2: 13.*    Plaintiff asserts that JMU for the purposes of Title 23 may not unduly restrict free speech in indoor spaces unless with good cause.

Robinson violated Plaintiff's right to free speech by judging him guilty of a violation of sexual misconduct for a permissible communication.  Plaintiff asserts that under free speech guarantees he has the right to respectfully, honorably and reasonably socialize with females and enquire as to the prospect of marriage.  Calabro and Estes violated Plaintiff's free speech rights when they initiated adverse legal action, in the form of sexual harassment complaints, against Plaintiff, when Plaintiff was merely exercising his right to free speech and behaving honorably and reasonably.  Plaintiff must remain free to discuss personal and even sexual topics with university females, and make respectful propositions when he sees fit without fear of retaliation by government means.  The state is neither a husband nor a father-and coeds may not use the government in their place.  Men must be free to engage in normal socialization without fear of reprisals or false claims.  Defendants Calabro's and Estes' complaints, and the resulting Title IX persecution, are violations of Plaintiff's my right of free speech because Plaintiff had the right to socialize normally in the course of looking for a wife-at any reasonable time or place-including while Calabro and Estes were on duty at UREC.
Citizens of this nation and Plaintiff I can't live in fear that approaching women about the topic of marriage is going to result in some kind of harmful campus quasi-legal prosecution.  This fear impedes liberty.  Plaintiff cannot live in fear that a beautiful princess Cinderella is going to suddenly transform in a poof and a puff of smoke into a wicked old witch astride a broomstick-as Clabro and Estes did.  A citizen cannot live in fear of unfounded, bogus complaints by others which are then zealously processed by campus officials, as happened to Plaintiff, and turn a benign conversation into a matter for the Spanish Inquisition.  Plaintiff cannot be required to contact a lawyer so that he can intervene and communicate with the proper legaleeze every time Plaintiff is interested in a girl.  Older men have rights they may freely exercise to seek marriages with young girls, and these rights must be respected-whether they like it or not.

## 11.  DENIAL OF EQUAL PROTECTION

*14th Amendment, US Constitution.  USC Title IX.*   Robinson forwarded and championed the Does' complaints while obstructing Plaintiff's.  Robinson did not present *any* charges against Plaintiff-the actual testimony of the Does was kept secret.  He violated the law requiring equal protection to both accuser and accused.  Robinson probably realized the Does were lying-that's why he didn't follow due process protocol for officiating a sexual misconduct complaint-because it would have subjected the Does to cross-examination and rebuttal, exposing their lies-after they openly gave their testimonies.  As it was his lies deceived and manipulated Plaintiff, caused a big delay in Plaintiff's response in the form of litigation; as well as humiliation when Plaintiff acted upon his promise and attempted to enter UREC-and was denied entrance.

## 12.  INTENTIONAL/UNINTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

*14th Amendment, US Constitution.  Right of persons to be secure in their persons.*  Robinson inflicted the pain of shame and embarrassment upon Plaintiff by fabricating a false record of a meeting, intending to cause and resulting in harm to Plaintiff through deceptive practices.  He misbehaved by communicating an official decision of sexual misconduct that was not properly adjudicated, with the intent of defrauding Plaintiff.  He undermined Plaintiff's freedom by his complicity in promotion of the Does' "Attack Complaints" – contrived weapons against Plaintiff to manipulate government officials into adverse action against Plaintiff.

<u>DEFENDANT #9)  JENIFFER PHILLIPS</u>
Title IX Officer for Athletics
MSC 2301;   261 Godwin Hall
Room 141, Harrisonburg  VA 22807
568-8036

## 1. DENIAL OF DUE PROCESS

*5th Amendment US Constitution; 14th Amendment, US Constitution.  USC Title IX.  VA Constitution, Bill of Rights, Section 11.  JMU Student Handbook/Rights, Roles and Responsibilities/Accused Student Rights (Sexual Misconduct) [__https://www.jmu.edu/osarp/handbook/OSARP/student-rights.shtml#accused-sexual-misconduct__].*
The US and VA Constitutions provide that no person shall be deprived of life, liberty or property without due process of law.  Plaintiff asserts that for purposes of the JMU Student Handbook due process procedures Plaintiff is a "student"-or should have been accorded the same rights as a student in the governance of sexual misconduct cases.
Phillips did not follow an orderly or unbiased procedure for assessing Plaintiff's discrimination claim and was clearly operating in favor of Defendants Calabro and Estes.

## 2. RETALIATION

*USC Title IX.  Code of Virginia 2.2-3103:*  "No..officer…employee…of a state or local government agency shall…  10.  Use his public position to retaliate..against any person for expressing views on matters of public concern or for exercising any right that is otherwise protected by law…"  Phillips retaliated against Plaintiff because Plaintiff's exercised his right to file discrimination, sexual misconduct and freedom of speech violation claims.  Phillips conducted an investigation into Plaintiff's discrimination claims that was flagrantly hostile to Plaintiff, in retaliation against Plaintiff's actions based upon his faith, creed and freedom of speech with Defendant's Calabro and Estes.  Having been highly prejudiced against Plaintiff by Robinson's, Calabro's and Estes' false reports, she joined in with them in their effort to attack Plaintiff.

## 3. CONSPIRACY

*18 USC – 241.*  Meghan Calabro and Erica Estes conspired to injure, oppress, threaten and intimidate Plaintiff in the free exercise or enjoyment of rights or privileges secured to him by the Constitution or laws of the United States, and because of his having exercised the protected

33

rights of age, sex, faith and free speech. It seems evident because of the similarities of their testimonies that they conspired together to falsify their reports, to inflate and distort their accounts of interactions with Plaintiff-in order to successfully bring about Title IX action against Plaintiff that would succeed on false merits. So, there are two counts of conspiracy active here-one of the two Does acting in concert to oppress Plaintiff, and one including all nine Defendants united under an umbrella of campus chauvinism-explained in next paragraph.

All Defendants are guilty of operating under a loose, perhaps unspoken conspiracy against Plaintiff to defraud him of rights in that no word was ever spoken on Plaintiff's behalf; there was no resistance or opposition to the negative actions against Plaintiff; there appears to have been no independent effort at assessing the merits of the case against Plaintiff or the merits of Plaintiff's objections to what happened to him. There was no effort to interview Plaintiff independently-which should have been undertaken by JMU officials in the President's Office as well as UREC when they heard that there were problems developing in the prosecution of the charges, because of Plaintiff's complaints. It was abundantly evident that Plaintiff had been denied due process by Title IX officials, which fact Plaintiff specifically noted in communication to UREC officials. All campus participants acted in concert, united together like one huge pack of wolves against Plaintiff, perhaps under the tacit recognition that a successful bureaucrat never contradicts or opposes another bureaucrat. It might be said that a static or constant situation of conspiracy against all outside opposition exists on the JMU campus-which sets up a natural condition of oppression and injustice against all who, like Plaintiff, are considered outsiders or offenders. An "all for one and one for all" club seems to exist, with campus bureaucrats as exclusive members. Justice in campus proceedings may only be obtained by setting up an independent advocacy center for those who are opposed by JMU bureaucrats.

## 4. INVASION OF PRIVACY

4TH *Amendment US Constitution; 42 USC 1983. Virginia Common Law.* As a citizen I have the right to be secure in my personal, to conduct personal, private business free from government interference and regulation. Government officials need to mind their own business-which they failed to do. By overstepping the boundaries of a legitimate investigation into my discrimination complaint at OEO, specifically in opening an avenue of inquiry into possible criminal activity by Plaintiff, Defendant Phillips invaded Plaintiff's privacy.

## 5. INTENTIONAL/UNINTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

14th *Amendment, US Constitution. Right of persons to be secure in their persons.* Phillips inflicted emotional distress by attempting to ensnare Plaintiff in a criminal charge while investigating Plaintiff's discrimination complaint. She was also obviously and flagrantly hostile to Plaintiff. Phillips turned the investigation of Plaintiff's free speech claim into a hostile inquisition and an attempt to ensnare Plaintiff with criminal charges.

## 6. DENIAL OF EQUAL PROTECTION

14th *Amendment, US Constitution. USC Title IX:* Phillips denied Plaintiff equal protection by taking Calabro's and Estes' side during an investigation, hampering the effective prosecution of

my Discrimination claim. She failed to be impartial when assessing the merits of Plaintiff's case and prosecuting Plaintiff's claim.

**************

## UNCONSTITUTIONAL ASPECTS OF TITLE IX LAW

*Plaintiff petitions for this honorable Court to rule on the constitutionality of various aspects of Title IX, by which Plaintiff was afflicted.*

1. Anonymity. In this case Plaintiff believes being able to keep identity secret acted as a shield from behind which the Dirty Does could launch bogus attacks without fear of exposure of their reputations to public, campus and peer scrutiny. Anonymity might be appropriate where rape has occurred and a victim needs privacy in order to be shielded from the public shame of her ordeal. But it is clearly not a concern in ordinary events where there are no sufficient grounds for it. In this case it has encouraged despicable conduct by providing a cover behind which liars can lob bombs at their adversary. In other words they can lie and misbehave safe from the knowledge of the university at large. This creates a situation where there is no equal protection of the law of both the complainers and their victim-the Plaintiff. It is essential that all of these defendants come out onto the public stage and be identified, and their testimony placed in writing in the public record. Title IX anonymity violated the Plaintiff's right to confront his accusers. Attack-Complainers must be identified, held publically accountable, made to stand in campus proceedings, directly address issues and be cross-examined. Otherwise their testimony is effectively hearsay and cannot be permitted into court. So Title IX is unconstitutional because of secret identities-and this aspect of it needs to be struck down or modified.

2. Title IX is too vague and ill defined. There are no metrics of harassment that are published by which potential offenders can assess their conduct and be warned. Title IX opens up the potential for abuse by campus administrators. It does not establish definite, measurable criteria for sexual misconduct-but actually leaves it in the subjective response of Complainers. Definitions of infractions up to the imaginations of Title IX sex czars all over the land, and gives them an empowerment as sexual gods that is way out of proportion to their rightful authority. Title IX does not establish specific boundaries for violations-they can be made up on a whim. It allows subjective and capricious use. It creates the opportunity for false claims to arise without adequate support and then succeed in causing considerable damage. This is what happened to me. Complaints may be used as a device to harm those against which complainants have prejudice-this also happened in my case. It causes slandered victims to suffer from bogus complaints. Campus officials are using Title IX to establish sex police dictatorships separate and apart from the law of the land.

3. Title IX provides grounds for religious discrimination and the establishment of a state-sponsored religion, in that values for sexual conduct of the state can be used to dominate campus behavior. Title IX fails to set fixed standards for assessing conduct and defining violations, giving room for broad interpretation and unlimited abuse. It promotes and establishes a broad, firm basis for Attack Complaints-contrived weapons manipulating government officials into adverse action through the use of sexual misconduct claims.

35

4. Title IX and the Sex Trap. Title IX acts as a shield for abusers. It sets up the situation wherein coeds can dress in sexually enticing attire, and then selectively attack men who are drawn in. The Doe Sisters and the other young ladies of UREC are aware that revealing clothing is going to draw men's attention. They should expect this and justly should not be offended when they receive sexual and romantic propositions. If they attempt to draw men to them then they should not complain when they receive male attention. Title IX allows discriminating females to complaint selectively-for they can choose to complain about one man, but overlook the actions of another. This fact introduces a factor of whimsy and intolerance into the equation-and prejudice: for those the Dirty Does of this world are wroth with are on the receiving end of their complaints, but those the Does favor are spared. This is clearly an unfair situation for those men who are complained about-and it brings the Title IX legislation into examination for failure to protect equally all citizens.

Tests show that men are aroused by visual stimuli such as naked pictures of women. Because men are most likely, in fact almost universally, to make sexual advances toward women Title IX legislation is tilted against men, and for that reason it is unconstitutional-in that it denies equal protection of the law to men, giving advantageous protection to females. It could even be said that Title IX is a weapon of warfare against men to deprive them of rights and empowerments inherent to their sex. Those who pass laws like Title IX say they are for everybody but in reality they're doing something for somebody, usually a narrow set of constituents, plying their particular political interests against others. Title IX was passed with empowering women as its goal, and this clear indication shows that the law is unconstitutional.

The Ms. Does of the country cannot be allowed to taunt and tease while at the same time hiding behind the law, daring any male to say anything to them. This is hostile activity toward men, and makes for an unwholesome atmosphere. Naughty women create the "sex trap" through this mode of behavior-in that those men who respond to the sexual bait are penalized instead of rewarded. When the Does of the nation display sexual wares it is reasonable to assume that they are angling for sexual adventure. Propositions should come as no surprise. So it is a valid conclusion that it is a bad faith complaint when Does who dress with a flagrant display of sexual attributes file Title IX charges.

5. Frivolous Complaints. The enforcement of Title IX for minor, insubstantial, non-meritorious acts is in effect establishing a Nazi Speech Code over a campus-where minute, trivial and ridiculous supposed violations of a girl's fragile sensitivities can trigger a bogus complaint that must, because of JMU's automatic reporting and investigating policy, be scrutinized to the max by the Title IX Sex Police.

6. Ill-defined Standards of Harassment. As a citizen I have the right to possess in mind a solid, reasonable definition of behavior expected under a law. Up unto that set limit I have the right of freedom of speech and activity. Those standards are not in place. They have to be clearly published and set. The Does had to show some solid sign that they did not appreciate my attention-and they didn't. They were required to clearly turn the normal green light that is ordinarily in operation at the intersection with a single girl and a single guy into a red one.

Statistics show that most girls come to college to find a husband and get married. This fact means that most are receptive to ideas and proposals for socialization with that goal in mind-and so a male may reasonably be expected to presume that the average coed is receptive to social proposals. The government is not a replacement for simple and ordinary, expected minimal social skills and effective communication that politely declines male attention-that a female coed employee should be expected to possess and utilize. If she fails to use the "red light" signal, then

36

a male cannot be held responsible if he keeps traveling through what appears to be a series of green lights. He has the freedom of speech and activity until he is clearly and plainly, and audibly, informed that further attention is not wanted.

## REQUEST FOR REMEDIES AND AWARDS

1. Termination from employment (or similar if employee is no longer employed) for Calabro, Estes and Robinson-for egregious official misconduct.

2. Appropriate punishment for all other JMU officials found to have committed misconduct in office, including termination and removal if appropriate, up to the President of the University. Hold all accountable for whatever may be discovered they have done wrong.

3. Official recognition of my men's, including older men's rights to freely and respectably socialize with JMU employees and students, including conversations about the topic of marriage, asking coeds for dates and other activities normal and common to the single male. Older men have rights they may freely exercise to seek marriages with young girls, and these rights must be respected.

4. Changes in JMU policy so that employee and student orientations include material advising that older men have the right to freely socialize and seek marriages with university females, and any other steps deemed practical and effective to prevent troubling and harassment of older men who seek relationships with coeds. James Madison University will engage in proactive communication during student and employee orientation to inform all of older men's rights to seek relationships, free from harassment. JMU will train both students and employees that people of any age may make respectable romantic overtures and have a full right to do so. Provide during orientation information that marriage to an older man is a viable, respectable option for a girl.

5. Reinstatement of Plaintiff's UREC membership-free for life-without prejudice or harassment, and a free parking permit for life. Payment for time lost and for cost of purchasing alternative recreational facilities while suspended from UREC. Prorated refund for balance of UREC membership and parking permit lost when suspended.

6. Reimbursement for all other costs and fees, including but not limited to FOIA copies, travel and attorney's fees.

7. Reimbursement for Plaintiff's time spent preparing briefs, attending interviews, court appearances at the prevailing attorney rate of $300/hour.

8. JMU is to publish an official apology in the Breeze and Daily News Record, worded according as Plaintiff will approve, for the harm done to Plaintiff.

9. In recognition that abuses have occurred and will continue to occur, JMU will cease the policy of automatic reporting by managers of trivial suspected incidences of Sexual Harassment. Managers will be empowered with discretion to report only substantial and serious claims, to

prove out claims and examined complainers for truthfulness. JMU and Title IX officials will set the bar higher to meet the standard of sexual harassment, so that other citizens are not hauled in for minute infractions or from false claims.

10. In recognition that a serious conflict of interest occurred in the managerial prosecution of the sexual misconduct activity directed against the Plaintiff by UREC, new standards shall be devised to prevent conflict of interest among those filing claims.

11. JMU will take affirmative action to dismantle the Sex Trap university-wide, including but not limited to requiring that all JMU employees dress in non-provocative attire while on duty.

12. The adverse, damaging actions of those involved in this defamation and violation of protected civil rights has caused Plaintiff to be held in contempt by associates at JMU and elsewhere-because Plaintiff is now reputed to be an offender who committed sexual misconduct. This designation was determined and assessed without the proper administration of justice with due process-and was clearly crooked, devious and deliberate. It was the direct result of conscious and calculating lies communicated by Calabro, Estes and Robinson; and transpired because of the contribution, collaboration and/or collusion and crimes of omission of other defendants. Therefore Plaintiff believes that a strong precedent in punishment should be set as a sound deterrent to future aggression and abuse of Title IX empowerments and Equal Opportunity issues by campus bureaucrats around the nation, and to deter coeds from fabricating false information, slander and defamation against men in the process of bringing about an attack complaint. By adjudicating according to these earnest requirements the Court is fulfilling its duty in establishing justice and setting standards that act as a buttress against future incursions against the rights of citizens. Plaintiff asks that this Court act to restrain campus officials from going outside of the law in their activities. Plaintiff asks therefore for a hefty penalty against all the participants in this fraud, not only as punishment for their misdeeds, but to serve as protection for all US citizens against future abuses by campus officials around the country. Plaintiff therefore request a monetary award of $46,000,000.00 (FORTY SIX MILLION DOLLARS) for defamation, slander, disparagement and dishonor of my Plaintiff's good name; violation of his civil rights and other illegal activities-to be apportioned according as this Court may please among the Defendants. JMU to disperse the award in a whole lump sum to Plaintiff and afterwards collect, if possible, the awarded amounts from each of the guilty-but in any case JMU is responsible for the entire award to Plaintiff, whether or not it can collect from co-defendants.

13. Hold all accountable and distribute punishment for whatever may be discovered they have done wrong, including assessing any and all other awards, remedies and orders deemed appropriate and necessary considering the circumstances and facts.

14. Establish at JMU an independent advocacy center for accused citizens.

## DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury.

## PETITION FOR INJUNCTIVE RELIEF

38

Plaintiff requests the Court to order that his UREC membership be restored pending the outcome of this case.

Here is a brief recounting of the facts and circumstances giving rise to this litigation. Plaintiff's primary career is in Christian ministry-mostly in the areas of praise and worship music, and; how to rule a nation from a biblical perspective. This had involved an intensive study of doctrines and issues ranging from Sex to War.

The main issue is that Plaintiff (aka "I" or "me") has been slandered and defamed by the exaggerated and false accusations of a few of the defendants (Calabro, Estes and Robinson). A simple, ordinary, trivial, everyday affair that has no basis for presentation to this Court has, because of the prevarication of these defendants, been turned into an exercise in crookedness that is very worthy to be considered here. These primary defendants are guilty of egregious official misconduct. The foundation of what was done to me is based in false accounts and a corrupt adjudication of sexual misconduct that followed no due process protocol at all.

On the evening of March 3, 2016 I was exercising at UREC, the JMU recreational facility, where I had an alumni membership. I stopped briefly for a conversation with a coed employee, Meghan Calabro (aka Miss Doe #1), with whom I'd had several favorable and pleasant previous interactions. I'd grown to like her, admired her beauty, intelligence, and other qualities. She seemed genuine, a good prospective partner, someone who could be trusted to last in the long run. She had responded to previous interactions with me pleasantly and agreeably. She was glad, or appeared so, every time I spoke to her. She had turned on the green light-and I was ready to go through. She had given me green lights all the way down the trail, at every intersection where she could have turned on a yellow or a red. There had been no resistance on Calabro's part if romantic communication was unwanted; with no resistance it is acceptance and encouragment.

After explaining that my faith and reliance on biblical wisdom and law for moral guidance allowed me to have a young wife, even though I was an older man I said, "I'm looking for a wife: and you seem like a good prospect." Then I asked, "Would you be interested in communicating, in getting to know each other better, with the eventual possibility of marriage? Would you think about it?" With that I walked away to continue my workout.

The next day I received an email from UREC official Bob Golson. He had suspended my membership because of charges of sexual harassment. He required me to report to the Title IX coordinator, James Robinson. Defendant Calabro had given clear messages previously that I had interpreted as favorable and encouraging-a series of green lights indicating she would keep the light green in the future. But those green lights only led me to drive off into the darkness and over a cliff. She now characterizes all of those sweet and pleasant, brief interactions as strange and sour ones –and says all of her green lights were red ones! This is a strange reversal of nature.

You see, I've been a Bible believer and researcher for about fifty years now. I see myself as a righteous man with the proper Bible foundation for living. With this foundation for morals and ethics I proceed confidently. I see most other men as weaklings, fools and sissies who've been tricked, beguiled or intimidated into relinquishing their God-given rights and empowerments, and now live more on the level of compliant, subservient dogs than of true men. These men are not fit to rule a family, a church or a nation. This "failure of manhood" is a key discovery in my study of Christian doctrine and one of the chief theological achievements of my life.

I've studied morals and ethics for decades from a biblical perspective. I have found absolutely nothing in God's Word that prohibits or discourages me from having a young wife, although I am now 65. In fact I view it as uniquely perverse for an older man to be ideologically wrestled and defeated into a realm of thinking so juvenile and ignorant that he believes that what is contrary to his best interest and happiness-having young wives-is morally wrong; and he must be relegated to only old women. You'll find that at no time will I violate the wisdom or law of the Word of the Lord. At the same time I know what my rights are-and I'm not afraid to stand up and fight for them in a hostile world-as you witness this day. As a result of my faith and virtually lifelong work in study and research in the Bible field, I live as a stranger in a strange community and must deal with the aggregate hatred that is common in American culture against me. In my view I am "right"-and they are "wrong". However, wrong often prevails in a sick society-and this is the unfortunate circumstance I must deal with.

I made an appointment with Robinson on the Ninth. At the very brief meeting he told me that there was no sexual harassment involved. He said that Calabro should have simply said, "Thanks but no thanks," and that would have settled the matter. He said that Calabro had "freaked out". He said that her statement had corroborated my own. He would take care of the matter, implying I should not worry about it. He would write (Defendant and UREC official) Golson declaring my innocence-there was no issue of sexual misconduct-and my UREC membership should be restored. I thanked him. We had some good laughs over the ridiculous idea of oversensitive women feeling queasy uncomfortableness-sparking unjustifiable sexual misconduct complaints. Then I left. The part of our visit covering the pertinent, critical issue could not have lasted over five to ten minutes. There was no presentation of charges against me at all-by any party.

A few days later I visited UREC, expecting my membership to have been restored. Instead, to my surprise, it was still suspended. I learned later that Robinson had given a completely false report of our meeting to Golson. I tried to get an explanation from Robinson but received none. I tried to get an explanation from Golson, but received none. On March 30 I received an email from Golson saying that, after consultation with Robinson, my UREC membership had been permanently revoked!

I filed a request for documents under the FOIA. When I received them in early July I discovered that Calabro had distorted and exaggerated the circumstances, and had outright lied about key facts. I discovered that her supervisor, Erica Estes (aka Doe #2), also filed a false report about my behavior. Estes had a conflict of interest in managing Calabro's complaint. She should have excused herself from administrating Calabro's issue. I had once had an interest in Estes, but over time had lost interest. When she learned of my affection and admiration for Calabro, it likely set off the scorned woman effect, and she plied her bias against me in a deceitful and prevaricating account of my behavior toward her years earlier. Almost literally the only thing truthful about the two women's reports are the dates. This is also true of Robinson's report on our conversation of the Ninth. In ludicrous communications to UREC and other officials Calabro and Estes made it appear as if I had followed them around the gym panting with a tongue hanging out of my drooling mouth. These are falsified accounts.

When I had met with Robinson I had was completely unaware that Estes had thrown in her own adversarial testimony against me or was involved in any way with the case. I had no knowledge of the negative content of Calabro's testimony. I could not respond to any charges because none were presented. I at no time gave any testimony in my defense to anyone, because I was never charged with anything, did not hear any evidence, and didn't realize until early July,

40

when I received FOIA materials, what had been done to me behind the scenes. Robinson did not follow the due process protocol, that is in writing in the JMU Handbook, that he should have adhered to. About a month after our meeting he wrote a report of our conversation that is almost entirely fictional. Further discoveries of emails secured under the FOIA showed that Robinson had a pre-planned goal of eliminating me from UREC participation. Therefore it was impossible for the presumption of innocence to be in place for the Title IX proceedings, as required. His meeting with me was a preposterous fraud beginning before I entered the doors. In fabricating a false report, Robinson displayed a unique and remarkable, shocking and amazing corruption practically unheard of in public service.

UREC management stood by in woeful incompetence while the lying girls and corrupt Title IX machinery rolled, offering no resistance to this corrupt process and blindly accepting the results.

As the truth of this matter unfolds it will reveal two lying Does as the original source of this problem. As if that weren't enough, Robinson piled on his bitter betrayal of trust in a remarkably disingenuous report. These three sources of testimony were accepted and rubber-stamped by Defendants Meck and UREC management. Calabro claims thankfully that her peers and management at UREC were supportive during her experience, but I believe that she actually came under the influence of hateful people who steered her into making a huge mistake-lying about the situation. The fact is they hate me because I'm an older man looking for a young wife. It is not because of the facts of my behavior-for they are honorable and harmless-but because of my age, faith and sex. I am striving against a broadly held prejudice in American culture, but I am in the right-American culture is in the wrong. In order to have a sustainable basis for a sexual misconduct claim Calabro and Estes realized that they had to inflate and fictionalize the facts and circumstances. And this has led to where we are today.

I filed a complaint of Discrimination on the basis of age, sex and faith as well as a sexual harassment charge against Calabro, and in addition a claim of abridgment of freedom of speech with the JMU Office of Equal Opportunity, headed by Robinson, on March 4. I heard nothing from the OEO at all-not even an auto-mail indicating that my claim had been received. I enquired at least four times during March about the status of my claim, including one visit in person, but received no answer. On March, under pressure from outside sources, Robinson wrote asking me to send the claim, because he had no claim! It is obvious that OEO obstructed my claim in retaliation. This is how crooked the OEO and Title IX offices have been under Robinson, and how fraudulent virtually any output is. This is another reason why my request for an injunction overruling the revocation of my UREC membership should be given the thumbs up. The administration of the decision against me has absolutely no basis in the reality of proper, lawful management of sexual misconduct claims.

It appears that JMU employees are all of the same pack of cozy rats in the riverbank, who stick together no matter what guile;, deception or prevarication is involved. It's a big group of fakers who want only to please each other. They appear to have coalesced into a mafia type network of mutually supporting members who see the way to a successful career in not offending other loyal government apparatchiks at any cost. It appears that campus employees and bureaucrats stick together in one slimy mass similar to maggots in a rotting deer corpse by the roadside. The thrive in writhing, squirming and rolling in the slimy muck of the putrid flesh of advantageous social and government activities if it is even minimally favorable to advancement and security. They wiggle in the ooze in blissful fraternity and monetary merriment, a group of self-supporting liars. There are the main characters in this made-for-a-soap-opera drama as well as

41

the supporting cast who rubber-stamped the allegations of the stars of the show. What is truly amazing here is that there was no quest for justice and truth whatsoever in the JMU process. It was as if I had placed a foot in a bear trap hidden beneath the leaves, and the sharp, cold steel jaws of the JMU system clamped shut on my leg-with no one to come to my aid or rescue.

As this honorable Court investigates this matter it will be clear that I have been deprived of rights through a clearly disorderly process and by corrupt public servants who failed in their duties to honorably serve the citizens of the State of Virginia and the United States. You will find that there has been no proper adjudication of this matter. Therefore the result of it is a fraud, and worthy to be overturned as the just result of this Injunction and Complaint.

JMU has a policy requiring automatic reporting of the slightest suspicion of sexual harassment by all management. UREC officials failed to prove the allegations of the Does, but relied on Title IX advice instead. Even when I informed them that the Title IX Administrator had failed to utilized expected due process procedures, I received no communication. The ripping of sexual misconduct matters from the hands of immediate superiors deprives them of the discretion necessary to properly administrate claims.

JMU's interpretation of Title IX is too broad and vague when only a few words of romance and affection add up to a violation of the law. It gives the Title IX Coordinator the powers of a Sex Harassment Czar. They need to set the bar higher to meet the standard of sexual harassment, so that other citizens are not hauled before Title IX for minute infractions. Restrict Title IX czar to prosecution of only substantial claims.

Both sources of complaints against me used by the Title I Coordinator, James Robinson, lied in their testimonies. Their complaints are lying contrivances, fraud and in effect "attack complaints" taking advantage of Title IX prosecution, and especially of JMU's automatic reporting and investigation of any suspected Title IX issue-without review by employee management. Mr. Robinson's administration of these matters is bogus and corrupt. He filed a report about a meeting with me that is almost entirely fictional and prejudiced heavily against me. He has used his position and the powers of government to attack me. In effect his actions are a maladministration of justice. I filed my own complaint with the campus Office of Equal Opportunity, but it was obstructed, possibly in retaliation for my filing of a discrimination complaint.

If rights and privileges are extended to all at JMU, then they can be deprived of none except with adequate grounds and sufficient cause based in facts of tangible offenses. This is clearly missing in my case. My rights and privileges have been stolen from me by dishonest officials, and I deserve to have them back.

The documents I've seen under my FOIA request indicate a conspiracy by Robinson against me prior to my meeting with him-even if it meant defrauding me of my rights. His goal was to remove me from UREC participation, and he contrived a report that accomplished that goal. His agenda was not to adjudicate my case fairly, but to rule against me despite the circumstances and facts.

Everything I actually did was absolutely legal and acceptable in the realm of my spiritual law in that it violated no biblical ordinances. It was also perfectly legal under state and federal codes. I have the right to freedom of speech, meaning I can socialize as a single male with available and acceptable females at virtually any time and place. All of my communication with the Does was honorable and respectable. Common girls cannot be allowed to make men just plain shut up of what they are thinking-which is what the Does are trying to do, and Robinson is attempting to uphold.

42

The Defendants cannot prove any cause by which I should be excluded from UREC participation. I have been an active participant in JMU recreational activities since about 1993, with no problems. They may come up with some psycho-speak about needing to protect the Does from feeling uncomfortable by excluding me from UREC, but this is merely over-sensationalizing-and their protests should be ignored.

Calabro opened the door for prurient communication by her habit, manner and mode of being. If she made an effort to incite male interest, then it has to be assumed she was prepared for whatever male romantic and sexual overtures came-and it was only because of hateful prejudice that she found my communication offensive. It's the circumstantial evidence that is conclusive. Title IX gives Ms. Doe the opportunity to strike out at those by whom she is offended, while allowing similar communications from approved sources. This could be called "selective complaining" about sexual harassment. There is a bias against the older man pursuing the younger woman built into our culture, and I think it can be presumed to be operating here. You can probably find evidence of Ms. Doe's prejudicial feelings, and the feelings of her supervisors, in official documents relating to her complaint.

The existence of the Title IX penalties requires females who do not want sexual attention to give absolutely no communication whatsoever that they are open to this attention. There can be no ambiguity in female communication. Ms. Doe sent a sensual signal, why is she offended if she received a response?

UREC and Title IX are in the business of hyper-sensationalizing trivial occurrences in the area of male romantic communication. They turn everyday romantic overtures into gross negatives. They turn ordinary, harmless issues into mega-crimes, then issue draconian punishments. They convolute logic and rhetoric to turn positive actions into negative ones. They bring their own personal animosities and prejudices into the administration of justice process and institute judgements based upon them rather than facts of the law. In effect they are taking the law into their own hands, with a parochial interpretation and administration of Title IX, kidnapping the legal process and tilting the field against the accused.

Hyper-sensitive, silly coed employees characterize honorable, mild and innocent interactions as wicked. The Ms. Does did this to me. They manufactured deliberately hyped up, subjective overreactions to improperly influence managers to assess the situation as a harassment. UREC officials seem to fear the entire staff of the facility will plunge into hysterical hypertension if a male found guilty of sexual misconduct is allowed to reenter. This is stupid. From the idiotic punishments handed out to offenders including, in my case, permanent revocation of membership, you would think that UREC staff had been thrown into such a tizzy that they required a handful of Prozac every few hours in order to cope.

When a young lady makes an overt and clearly visible and identifiable sexual communication in her enticing attire she should reasonably be expected to receive appropriate sexual responses from males, and she should be held responsible for responding to these male initiatives *herself*-not with the University's assistance and oversight. When the University sides with Ms. Doe fully knowing that she made prurient suggestions through her revealing attire, it is taking a class action and siding with females against males. This is sex discrimination by the University. Males cannot be held responsible if they respond to females' positive messages for attention. Ms. Doe appeared to be ready to be wed and bred, so the cause of this incident is on her, and she has no grounds upon which to object to romantic communication. She made no objections to compliments and did not mention a boyfriend.

43

In addition to her wanton physical display of sexual attributes, Ms. Doe's friendly attitude encouraged romantic communication. There was absolutely no indication that she was annoyed, even once, much less was a victim of badgering by a series of unwanted behaviors. This situation does not meet the definition of "harassment" in that there was no repeated pestering and troubling. Besides, Ms. Doe, UREC and Title IX officials are hyperventilating over a trifle. This is where the law is being abused by arbitrary use of poorly defined legislation, with subjective interpretation, by local authorities, and needs to be changed in order to be constitutional. When the definition of "sexual harassment" is left up to local bureaucrats and in the excitable, subjective mind of Ms. Doe-then you have a source of corruption in that the law can be wielded against anyone they don't like for political, spiritual or even personal reasons. By the hubbub raised over a silly non-issue you'd think a psychiatrist was now required in attendance in every office throughout the UREC facility so that the frazzled Does and UREC bureaucrats can obtain immediate assistance whenever they get a bad case of the "uncomfortableness". The fact is they're throwing a fit over nothing-and that should be recognized.

When Ms. Doe made an unreasonable, legal charge as the result of a reasonable communication-this was not a bona fide and permissible deed. Then when her superiors aided and abetted the transmutation of her fraud into a seemingly legitimate complaint, transforming my innocent message into a civil crime, their assistance advancing her misdeed and in the process putting me through this ordeal is, because it is a discrimination based upon sex in an educational context, in and of itself sexual harassment. It makes fraudulent use of the law by bringing a persecution through government power upon me-when there is really no case of sound facts upon which to rely.

This case was reviewed and determined, or rather re-determined, entirely absent of my participation and knowledge. It appears that since the proper protocol for Sexual Misconduct cases was not followed then Mr. Robinson's decision is not legitimate. This means the legal foundation for Mr. Golson's revocation of my UREC membership is based upon faulty testimony-and therefore must be rescinded or revoked-and my request for a court order restoring my membership pending the outcome of trial should be granted. Campus officials are operating independent of standard legal procedures and are ignoring legal protections when assessing conduct and meting out punishment.

There is no definition of "inappropriate activity". This is merely imaginative. The term can be abused. I was vilified by it. There are no compelling specifics given to justify the revocation of my membership. The only thing we hear are the opinions of three prejudiced women and a Title IX guy who did not follow the proper procedure expected for adjudicating sexual misconduct offenses. It is not up to JMU officials to be "morality police." This was an attack on older men in general. It is enforcing in effective religious values and exercising a state religion. Defining my communication as offensive indicates a standard for behavior has been set based upon some kind of foundation in values. What values? Those of three women. They have no right to make standards of judgment unless they are derived from specific guidelines given by a constitutional law. Official judgments must have a valid legal source. They have no right to vilify benign and natural behavior. I have the right to engage in normal social behavior without being attacked for it, and without the government entering the picture, with the Title IX administrator becoming a Sex Czar over the campus community. I would call seeking a wife normal social behavior.

It is extremely suspicious that I was afforded none of the due process required for student trials of sexual misconduct. Robinson and the Title IX office failed to follow the written due

44

process protocol for protecting student rights when deciding sexual misconduct cases. None of the most important rights of those accused of sexual misconduct were afforded me, according to the official policy manual:

https://www.jmu.edu/osarp/handbook/OSARP/student-rights.shtml#accused-sexual-misconduct

 I did not see any of the evidence against me, was not allowed to review any of it, had no formal hearing, was not notified of the time of case review and never had a formal decision in writing presented to me. For that reason alone the Title IX decision is illegitimate-and should be overturned. I have not received by any means of communication from the Title IX office that I was determined to have committed sexual misconduct. Without such I have no basis for appeal as stated in the JMU Title IX policy manual. Throughout this process it is clearly obvious that procedures and policies in place to protect the accused were disregarded, and therefore the workings of the Title IX office were corrupt. The shady dealings behind the scenes raises the possibility of malicious prosecution by Title IX, UREC, OEO and perhaps even the President's Office-apart from the facts and procedural requirements of the law.        Administrator Robinsons did not prove the Does out for deceit and falsehoods by personal interviews with either of them.
        Ample evidence that Ms. Doe's reaction and the charges she made were because of her own prejudices. There is no other plausible explanation for her deeds. My activity was not offensive, therefore there is no reason for her to abuse me. Therefore she would not have struck out at me unless she was hateful. I clearly have the right to say what I said under the Free Speech guarantee. There was no sexual content and no harassment whatsoever in my communication with Ms. Doe. The scenario she has contrived in her email communication with officials is mere fiction.
        The Defendant cannot prove any compelling cause that would prevent my reinstatement to active participation at UREC. Someone felt "uncomfortable" on a college campus?!    Are they trying to equate this to a terrorist bomb attack on an airport? Even their own Title IX administrator said that Ms. Doe simply "freaked out" and should have said, "Thanks, but no thanks." That this matter should reach a federal court and waste the time and resources of court personnel is ridiculous. If it weren't for the lies of the Does and Robinson we wouldn't be here-and the blame is entirely upon their shoulders, and those who contributed to their fiasco, for this situation.
        The employee's supervisor, Estes, should have recused herself from administrating Calabro's complaint because she was personally involved with past interactions with me, and as a result was prejudiced against me. Specifically, as best I can recall, I had shown an interest in Estes. Over a period of time I had grown disinterested in Estes and ceased to communicate with her. When Estes discovered that I had a similar interest in Calabro I expect she was seized with jealous rage, bitterness and resentment. In a repeat performance of the old adage, "Hell has no fury like a woman scorned," I suspect she took opportunity to extract vengeance upon me by encouraging Calabro to pursue a claim of sexual misconduct, and encouraging her to lie about the circumstances because Estes had found from previous experience that my interaction with her did not constitute sexual harassment-so her account of it had to be modified with lies in order to achieve the desired result of action against me.
        I've been utilizing university recreation facilities since about 1993. No problem. I have the right to socialize at university facilities. The campus is not a place where my free speech and

45

social life comes under extraordinary legal restrictions. The overwhelming strength in my case is that the actual incident was overwhelmingly trivial and does not constitute an infraction. It is only the fictional accounts of the Does and Robinson that gives their case any traction. There was neither anything sexual nor harassing in my conduct. It was in fact honorable. I can ask every single coed in the university to marry me if I want to. The due process protocol for administering sexual misconduct cases was not followed, in fact the decisions made by JMU officials were done by circumventing the rules.

This whole affair is a sham, a fraud and a lie, from the git-go. Dirty dealings behind the scenes are more responsible for what has happened than proper administration of justice. Campus officials must not be allowed to carve out their own legal, political and religious fiefdoms apart from and in fact in open rebellion against the law of the land. They cannot be allowed to rule over student and alumni serfs according to values that are extra-legal and contrary to the protections afforded the accused provided by the Constitution-such as discovery, presumption of innocence, proof beyond a reasonable doubt, cross examination and confronting witnesses. This makes campuses dangerous places that could turn into de facto states of their own. This is what I had to deal with!

When assessing and rejecting personal proposals Ms. Doe may discriminate according to her own opinions, choices, convictions and prejudices. She may refuse a proposition because of personal preferences on the grounds of sex, age, faith and race. But Ms. Doe does not have the right to bring the government into the equation as part of a prejudicial attack-and use its resources against me to prosecute her personal bias. She cannot complain about sexual harassment in an arbitrary and capricious manner. This is misbehavior in a public setting and under government auspices.

Another critical reason I need access to UREC is to look for witnesses who might testify favorably on my behalf. I also need to investigate the possibility of conspiracy by the Does to motivate employees to testify falsely against me, and find witnesses who may have overheard the Does conspiring to defraud me of my rights by telling similar, false stories. If I cannot reenter UREC, it is clearly unfair to me and may harm my case because the defendants can mine UREC for adversarial witnesses against me, while I am prohibited from the environment where supportive witnesses may still be available-and who may wish to support me but have no way of informing me of it.

## SUMMARY

The Doe Sisters fabricated stories about my behavior, then used these tales to motivate officials to taking adverse action against me. These officials never interviewed me. Robinson did not interview me in any substantial sense. He lied to me at the interview. He lied terribly in his report on our conversation. It's primarily because of these three people's lies that I am here today before this honorable Court. There are no basic, fundamental circumstances and facts of my actual behavior that justify suspension of my membership from UREC. In view of the aforementioned I request that this honorable Court order that my UREC membership be restored, with full rights as before, pending final adjudication of these matters.

Thank you.

Matt Armstrong
8-26-16

46