
CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUN 01 2017

JULIA C. DUDLEY, CLERK
BY: /s/ K. Dotson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MATTHEW W. ARMSTRONG, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:16-cv-53 |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES MADISON | ) | |
| UNIVERSITY, et al., | ) | |
| | ) | By:   Michael F. Urbanski |
| Defendants. | ) |        United States District Judge |

## MEMORANDUM OPINION

This case was referred to the Honorable Joel C. Hoppe, United States Magistrate

Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a recommended disposition of defendants'

motions to dismiss. ECF Nos. 7, 11. The Magistrate Judge filed a report and

recommendation ("R&R") on February 23, 2017, recommending that plaintiff Matthew W.

Armstrong's complaint be dismissed in its entirety. ECF No. 24. On March 8, 2017,

Armstrong filed a Response to the R&R. ECF No. 25.

Armstrong brought this case after his alumni membership at the James Madison

University ("JMU") University Recreation gym ("UREC") was revoked. On March 3, 2016

Armstrong was exercising at the UREC gym, and, according to Armstrong:

> I stopped briefly for a conversation with coed employee,
> [defendant] Meghan Calabro (aka Miss Doe #1), with whom I'd
> had several favorable and pleasant previous interactions. I'd
> grown to like her, admired her beauty, intelligence, and other
> qualities. She seemed genuine, a good prospective partner,
> someone who could be trusted to last in the long run. She had
> responded to previous interactions with me pleasantly and
> agreeably. She was glad, or appeared so, every time I spoke to

her. She had turned on the green light-and I was ready to go through. She had given me green lights all the way down the trail, at every intersection where she could have turned on a yellow or red. There had been no resistance on Calabro's part if romantic communication was unwanted; with no resistance it is acceptance and encouragement.

After explaining that my faith and reliance on biblical wisdom and law for moral guidance allowed me to have a young wife, even though I was an older man I said, "I'm looking for a wife: and you seem like a good prospect." Then I asked, "Would you be interested in communicating, in getting to know each other better, with the eventual possibility of marriage? Would you think about it?" With that I walked away to continue my workout.

Compl., ECF No. 1, at 45.[1] The complaint does not indicate how Calabro responded to Armstrong's proposal. However, the next day Armstrong received an email from a UREC staff member indicating that his UREC membership had been suspended because of sexual harassment. Id. His membership was permanently revoked on March 30, 2016. Id. at 46.

Armstrong fought the revocation of his gym membership on numerous fronts, including the filing of a Title IX complaint with JMU's Office of Equal Opportunity. Compl. at 47. He also submitted requests under the Virginia Freedom of Information Act, Va. Code Ann. §§ 2.2-3700–2.2-3714, seeking communications between JMU employees regarding his UREC membership. See Compl. at 46-47. In due course, Armstrong filed this federal lawsuit against JMU, Calabro, and seven other defendants asserting constitutional, statutory, and state law violations arising out the revocation of his UREC gym membership.

Armstrong asserts that "[t]he main issue is that Plaintiff ... has been slandered and defamed by the exaggerated and false accusations of a few of the defendants (Calabro, [Erica] Estes and [James] Robinson)." Compl. at 45. According to Armstrong, Calabro

---

[1] Armstrong was 65 years old at the time of this incident. Compl. at 46.

reported Armstrong's advances to JMU officials, which led Title IX Administrator Robinson to initiate an investigation. Robinson learned that Calabro's supervisor, Estes, had experienced similar advances by Armstrong. While Armstrong admits that he proposed marriage to Calabro on March 3, 2016, Compl. at 45, and "had shown an interest in Estes" in the past, Compl. at 51, he contends that Calabro and Estes "distorted and exaggerated the circumstances, and [] outright lied about key facts." Compl. at 46.[2] Armstrong also complains that he was denied due process during Robinson's investigation and ensuing revocation of his gym membership.

At bottom, Armstrong believes that Calabro and Estes invited his advances and that his conduct ought not be characterized as sexual harassment:

> When a young lady makes an overt and clearly visible and identifiable sexual communication in her enticing attire she should reasonably be expected to receive appropriate sexual responses from males, and she should be held responsible for responding to these male initiatives *herself*—not with the University's assistance and oversight. When the University sides with Ms. Doe fully knowing that she made prurient suggestions through her revealing attire, it is taking a class action and siding with females against males. This is sex discrimination by the University. Males cannot be held responsible if they respond to females' positive messages for attention. Ms. Doe appeared to be ready to be wed and bred, so the cause of this incident is on her, and she has no grounds upon which to object to romantic communication. She made no objections to compliments and did not mention a boyfriend.
> In addition to her wanton physical display of sexual attributes, Ms. Doe's friendly attitude encouraged romantic communication. There was absolutely no indication that she was annoyed, even once, much less was a victim of badgering

---

[2] According to emails Armstrong obtained via his FOIA request, when Estes learned of Calabro's incident with Armstrong from a student supervisor, Estes reported that "she knew ... exactly who the student supervisor was talking about" because Armstrong "had done the same thing to [redacted]" in the past. Pl.'s Br. in Opp'n to Summ. J. ex. 1, ECF No. 17-1, at 25-26.

by a series of unwanted behaviors. This situation does not meet
the definition of "harassment" in that there was no repeated
pestering and troubling. Besides, Ms. Doe, UREC and Title IX
officials are hyperventilating over a trifle. This is where the law
is being abused by arbitrary use of poorly defined legislation,
with subjective interpretation, by local authorities, and needs to
be changed in order to be constitutional.

Compl. at 49-50. The Magistrate Judge held a hearing on November 15, 2016 to address

Armstrong's claims and defendants' motions to dismiss, ECF Nos. 9, 11. As noted, the

Magistrate Judge issued an R&R recommending that all of Armstrong's claims be dismissed.

The Magistrate Judge recommended that all claims brought under 42 U.S.C. § 1983

and Virginia law against JMU, along with all such claims seeking monetary damages against

the other defendants in their official capacities, be dismissed with prejudice because the

claims are barred by sovereign immunity under the Eleventh Amendment of the United

States Constitution. As for Armstrong's claims under Title IX against the individual

defendants, the Magistrate Judge recommended those claims be dismissed with prejudice

because Title IX does not provide a cause of action against individuals. See Bracey v.

Buchanan, 55 F. Supp. 2d 416, 419 (E.D. Va. 1999) (collecting cases). The Magistrate Judge

recommended dismissal of Armstrong's remaining federal statutory and constitutional claims

without prejudice for failing to state a claim pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure. Lastly, the Magistrate Judge recommended that the court decline to

exercise supplemental jurisdiction over Armstrong's state law claims. 28 U.S.C. § 1367(c)(3)

(allowing district courts to decline supplemental jurisdiction over state law claims where the

court has dismissed all claims over which it had original jurisdiction).

The court has reviewed Armstrong's Response to the Magistrate Judge's R&R and finds his objections to be entirely without merit. Rather than address the legal principles and case law solidly framing the Magistrate Judge's R&R, Armstrong asks the court to jettison rules of procedure and the fundamentals of <u>stare decisis</u> in order to implement his vision of society. <u>See e.g.</u>, Plaintiff's Response to R&R, ECF No. 25, at 2 ("American males should be proceeding as *patriarchs*—father rulers—instead they have allowed bitchy old women and crappy religious people to tell the[m] how to live and what to do."). Armstrong's Response does not address the case law supporting the R&R, but rather argues that the court should set rules and precedent aside "if they stand in the way of Plaintiff's journey to justice." <u>Id.</u> at 3. Our republic, founded on the rule of law, is "a government of laws and not of men." <u>Cooper v. Aaron</u>, 358 U.S. 1, 23 (1958) (Frankfurter, J., concurring) (quoting John Adams, Massachusetts Constitution of 1780, pt. 1, art. XXX). As such, a court is not free to disregard the law to conform to the views of any particular litigant. Armstrong's objections are overruled in their entirety.

In sum, the court fully agrees with the Magistrate Judge's thorough and well-supported R&R, and overrules Armstrong's objections thereto. An appropriate Order will be entered.

Entered: 6-1-2017

Michael F. Urbanski
United States District Judge

5